BURNET and others *against* DENNISTON and others.

Where a subsequent judgment or mortgage creditor offers to redeem, the mortgagee cannot *tack* a debt due to him from the mortgagor, secured by another mortgage, on different property, nor any other debt which is not a charge upon the premises sought to be redeemed, and of which such subsequent judgment or mortgage creditor was not bound to take notice.

Where a mortgagee takes a release of the equity of redemption from the mortgagor, by a deed containing a full consideration, and with full covenants, the mortgage debt is considered as merged in the estate, and satisfied by the purchase, unless there be very precise proof to the contrary; and more especially where no claim is set up for more than six years after the purchase.

Where a subsequent judgment or mortgage creditor tenders to a mortgagee the full amount of the debt and interest, due on a prior mortgage, with his costs and charges, which he refuses to accept, unless another debt due to him from the mortgagor, not charged on the premises, is also paid; but proceed, to sell the land, under the *power* of sale contained in the mortgage, such sale is irregular and void.

Where the *advertisement* of sale of mortgaged premises, under a power, states a false assertion, as that the premises are to be sold for default of *three* mortgages, when they were only *two*, the third being on other land, by which the public might be misled, or purchasers deterred from bidding, the sale will be irregular and void.

So, if no *place* of sale is designated in the advertisement, or if the mortgagor was not twenty-five years of age when he executed the mortgage, a sale under the power will create no bar to the equity of redemption under the statute.

Where *J. S.* devised lands to *B.* for life, remainder to *C.* in fee, but *if he died without an heir*, then to *D.* in fee: *Held*, that the devise over could not take effect as an *executory devise*, but created an estate tail, which, by the statute, was turned into a fee simple absolute.

THE bill, filed 13th of *January*, 1813, by *Robert B. Burnet*, *Samuel Finley*, *John McLean*, and *John McCloughry*, stated, that *John McCloughry*, one of the plaintiffs, being seized in fee of a remainder in fee of a lot of land, of which

*October 26, 1820, and January 1, 1821.*

his father was tenant for life, at *Little Briton*, in *New-Wind-sor*, containing 70 acres, on the 15th of *March*, 1796, executed a mortgage to *George Denniston*, to secure the payment of 187 dollars and 50 cents, and on the 15th of *July*, 1801, another mortgage to the same person of the same land, to secure the payment of the further sum of 125 dollars; and which were the only mortgages ever executed by him of the premises. The plaintiffs first named purchased a judgment docketed prior to the 2d of *October*, 1801, against *John M'C.* for 68 dollars and 73 cents, who duly assigned the same to them. The assignees of the judgment, who had performed services, and advanced money to *John M'C.*, soon after the assignment, agreed with him that he should convey the land in fee to them, and that they should hold the same in trust, to pay themselves for their services and advances made, and for such further advances as might be made, with interest; and that they should redeem or purchase the said two mortgages, and reconvey the premises to him, on being reimbursed all such demands and advances, with interest, &c. That in pursuance of this agreement, *J. M'C.* conveyed the premises to them, the said three plaintiffs, in trust, and subject to the mortgages, &c. That the father of *J. M'C.* died in *March*, 1802, and the farm became vested in the said three plaintiffs, in trust, &c. That the mortgagee having advertised the land for sale, on default of payment, under the power contained in this mortgage, and a certain other mortgage mentioned in the advertisement, but to which the plaintiffs allege the land was not subject, the three plaintiffs first named, with the advice of *M'C.*, offered *G. D.* to pay the mortgages upon the said land, and requested an assignment of the mortgages to them. That on the 11th of *March*, 1803, before the day fixed for the sale, the three plaintiffs first named, tendered to *G. D.* the sum of 434 dollars and 20 cents, being the amount due on the two mortgages, with interest and costs, and charges;

and that he then had notice that the three plaintiffs were possessed of the equity of redemption, as assignees by deed, and of the judgment; but that *G. D.* refused to accept the money and assign the mortgages, pretending that a certain other mortgage, dated 27th of *November*, 1792, given to him by *J. M'C.*, to secure 62 dollars and 50 cents, and a book debt due to him by *Mary M'C.*, grandmother of the plaintiff, were charges on the land; and that he was not bound to submit to a redemption of the premises, until those demands were also paid. The plaintiffs charged that the third mortgage was on eleven acres of land in a different place, and had never been made a charge upon the lands first above mentioned; and had been satisfied by a release from *M'C.* the plaintiff, to *G. D.* of the equity of redemption, in satisfaction of the debt in that mortgage; and that, at any rate, these demands were not binding on the three plaintiffs first named, as judgment creditors and assignees of the two first mortgages, without notice of any such lien or charge, and seeking to redeem. That *Mary M'C.* died upwards of twenty years before the tender above mentioned, and that by omitting to claim the debt for all that time, *G. D.* had waived all right to claim it as a charge on the land, even if it had not been actually paid, but which they alleged to be the fact. That *G. D.* persisted to expose the land for sale, and it was sold at auction; and was struck off to *W. G. D.*, the son of *G. D.*, for 10 dollars; and *G. D.* gave to the defendant, *W. G. D.*, a conveyance of the land in fee. That in *March*, 1803, *G. D.* and *W. G. D.* took possession of the land, and continued in possession thereof until the death of *G. D.*, and that his executors, or *W. G. D.* are now in possession. That *W. G. D.* purchased with notice of the matters above stated, and that the *advertisement* for the sale of the land was not pursuant to the act, but irregular and void; that notice of the place of sale was not given, and the advertisement and sale professed to be grounded on the *three* mortgages, when the third mortgage did not include the land described in the

other two mortgages; and that neither of the mortgages contained a competent *power to sell*, under the statute, and that the powers were never recorded in the office of the clerk of the county. That the plaintiff, *M'C.*, was under twenty-five years of age when he executed the *third* mortgage. *Prayer*, for an account of rents and profits, &c. and to redeem.

The answer of the defendants was filed *June* 29, 1815, and *John M'Cloughry*, one of the plaintiffs, dying in *September* following, intestate, and without issue, a bill of revivor was filed, *July* 6, 1816, making his brothers and sisters, who with *James M'C.*, his nephew, were stated to be his heirs at law, plaintiffs, and *James M'C.* was made defendant; he having refused to join in the bill, claiming the whole property in fee, alleging that the intestate derived his title to the land from his grandmother, who devised it to her son, *J. M'C.* the elder, for life, and then to the said *John M'C.* the intestate, in fee, but *if he died without an heir*, then the land should go to the said *James M'C.*, in fee.

The other defendants answered the bill of revivor, admitting the facts therein stated, and leaving the question open as to the title of *James M'C.* As against *James M'C.* the bill was taken *pro confesso*.

The answer to the original bill admitted the mortgages; that on the 28th of *May*, 1796, the plaintiff, *John M'C.*, in consideration of 183 dollars, conveyed to *G. D.* in fee, (by a deed containing full covenants and warranty) the lands mentioned in the third mortgage, being two pieces of land derived under the will of his grandfather, containing 11 acres, and a garden spot, in *New-Windsor*, and which deed was recorded the 29th of *July*, 1801; that the twenty-five pounds, or 62 dollars and 50 cents, for which the said mortgage was given, remained unpaid, with the interest; that the said *John M'C.* refused to convey, unless the full consideration was paid, and refused to deduct the mortgage debt; that the whole consideration was accordingly paid to him, and he

agreed that the 62 dollars and 50 cents and the interest should become a charge on the premises covered by the two first mortgages, and the third mortgage, therefore, remained uncancelled. That each mortgage contained the usual power of sale, and *G. D.* under the power, in all the mortgages, in *September*, 1802, advertised the land comprehended in the two first mortgages. The defendants then stated the sale and conveyance to *G. D.*, &c. They admitted the judgment, but denied any knowledge of its being assigned, and supposed that it had been paid; they denied any knowledge of advances to *John M'C.*, or of the agreement stated in the bill, or the release to the other plaintiffs. They did not admit that the land became vested in the three first named plaintiffs in *trust*, nor the tender and refusal as charged, or that *G. D.* knew of any grant or assignment to the said plaintiffs, or of the judgment as charged, or that the equity of redemption was in them; and they alleged that the debt mentioned in the third mortgage remained due; and that *G. D.*, at the time of the sale, had a demand against *John M'C.* for a debt of his grandmother, *Mary M'C.*, for board and money expended, amounting in 1779, to 144 dollars and 48 cents; that she died at the house of *G. D.*, who paid her funeral expenses, and she left no sufficient personal estate to pay him that debt. *W. G. D.*, the defendant, denied that he had any notice, when he purchased, that the land had been conveyed to the three first named plaintiffs, or that they were assignees of the judgment, or that they were ready, or offered to redeem. The defendants said, they believed that *John M'C.* was twenty-five years old, when he gave the last mentioned mortgage, in 1792, &c.

The cause having been put at issue, witnesses were examined, and evidence taken on both sides. The material facts proved, are stated in the opinion delivered by the Court.

*October* 26, 1820. The cause came on to be heard this day.

S. *Jones*, for the plaintiff.

J. *Radcliff*, contra.

_____

THE CHANCELLOR.    The three first plaintiffs and the
heirs of *John M'Cloughry*, who was one of the plaintiffs in
the original bill, seek to redeem the premises, being about 70
acres of land purchased and possessed by the defendant
*W. G. Denniston*.    Those three plaintiffs claim to be judg-
ment creditors of *John M'Cloughry*, the mortgagor, by virtue
of an assignment of a judgment of *J. Goldsmith*, against
*John M'C.*, and they claim to be subsequent mortgagees,
by virtue of a deed to them from *John M'C.*, of the 70
acres, and a certificate from them that the land was to be
released on the payment of 111 dollars, with interest.    Un-
der this title they attempted to redeem those premises by a
tender to *George Denniston*, the mortgagee, of the amount
due on the two mortgages to him from *John M'C.*, and of
the costs and expenses of advertising the land for sale under
a power contained in the mortgages.    There is no dispute
as to the fact of the tender, and of the requisite amount, prior
to the sale, and of the refusal by *G. D.* to accept the money
and suffer the redemption, except upon the condition of
paying another mortgage of *John M'C.*, to him upon other
land, and a book debt against a grandmother of the said
*John M'C.*    The condition was not acceded to, and *G. D.*,
the mortgagee, sold the land to his son the defendant *W.
G. D.* for 10 dollars, who took possession, and has held the
land to this time.

    There can be no doubt that the plaintiffs who made the
tender were entitled to redeem, and that the condition im-
posed by *G. D.*, was unlawful and unjust.    The further
claims set up by *G. D.* if well founded against *John M'C.*,
were not a charge upon the mortgaged premises, or such,
of which these plaintiffs, as subsequent incumbrancers, had
notice, or were bound to regard.    The mortgage had no

right to tack another debt secured by a mortgage upon other lands, to the two mortgages sought to be redeemed by a subsequent judgment and mortgage creditor. And there is good reason to conclude that the claim under the mortgage on other lands had been already extinguished, for *G. D.* had purchased, in 1796, and about three years and a half after the date of the mortgage so interposed, the equity of redemption from the mortgagor himself to the lands so covered by the third mortgage. The deed under which he took the equity of redemption was with full covenants, and contained a consideration expressed of £73 4s. when the original mortgage debt thereon was only £25. Without very precise proof to the contrary, (and we have none,) the presumption is, that the parties intended that the charge should merge in the estate, and was settled when the purchase was made. The presumption is stregthened by the fact, that from 1796, when the equity was purchased, down to *March,* 1803, when the claim was set up against the plaintiffs, the case is silent as to any demand or notice of that debt. There is equal reason to conclude that the book debt claimed, was not a subsisting debt even against the estate of *Mary M'Cloughry.* It was a debt of the date of the year 1779, when *Mary M'C.* died, and twenty-five years before the tender; and *G. D.* was her executor and son-in-law, and as we have no account of his administration, the presumption is, that the book debt, if true originally, was satisfied by him out of her personal estate, for it is in proof that she possessed personal estate.

The obstacles to a redemption set up by the mortgagee, *G. D.* at the time of the tender, were accordingly unlawful and groundless, and rendered the subsequent sale irregular and void.

Nor can the defendant, *W. G. D.,* be entitled to protection as a *bona fide* purchaser, without notice. It is in proof by two witnesses, that the plaintiffs, or one of them, was present at the sale, and in the presence of the defendant, *W.*

VOL. V. 6

*G. D.*, forbade the sale, and stated publicly the right of the plaintiffs, and the fact of the tender.    The defendant, *W. G. D.*, was a son of *G. D.* the mortgagee, and bid only the sum of 10 dollars, and the mortgagee insisted as a condition of the sale, that the money on any bid should instantly be paid down.    There is very good ground, from these circumstances, to conclude that the sale was colourable merely, and collusive between the father and the son ; and the latter is not entitled to the character of a *bona fide* purchaser for a valuable consideration, without notice.

The sale was irregular and void in other respects.    The advertisement of sale contained false assertions, and was an imposition upon the public, and a fraud upon the rights of all concerned.    It stated, that the 70 acres were to be sold for default of payment of three several mortgages given upon that land, to secure those payments.    One of these mortgages was the third one, already mentioned, upon other lands, being 11 acres and a garden spot, and confessedly not the 70 acres in question.    There were, therefore, but two mortgages upon the land to be sold.    Such a false allegation tended to deceive the public as to the extent of the incumbrances, and to deter purchasers from bidding.    Another defect in the advertisement was, that no place of sale was designated, and the public had no certain and authentic evidence, as the statute intended, of the place of sale.    It is, likewise, worthy of notice, that the power inserted in the third mortgage thus intruded upon the public, was void, for the mortgagor was not of twenty-five years of age when the mortgage was executed.    This is clearly proved.    From all these circumstances, the conclusion is clear and irresistible, that the sale creates no bar to the right of the plaintiffs to redeem.

The objection to the title of the plaintiffs as creditors of *John M'C.*, and as legal representatives of *John M'C.*, is without any foundation.    He was seized in fee, at the time

1821.

BURNET
v.
DENNISTON.

of his death, subject to the incumbrances which are stated in the case. The devise of the land was to him in fee, but if he should die *without an heir*, then the land was to go to *James M'Cloughry*, the defendant. These words most clearly created an estate tail, which was turned by our statute into a fee simple absolute. The devise over could not take effect as an executory devise, for *John M'C.* could not die without an heir, living *James M'C.* The limitation over was impracticable and absurd as an executory devise; and besides, it was too remote, and necessarily meant an indefinite failure of issue. The only reasonable construction, and one conformable to settled rules, is to hold it to have been an estate tail, turned by statute into an estate in fee.

I shall, accordingly, declare, that the plaintiffs, who are judgment and mortgage creditors, are entitled to redeem the 70 acres covered by the two mortgages, upon paying the amount due thereon; and that the claim of *G. D.* to set up a mortgage debt upon other lands, and a book debt against *Mary M'Cloughry*, as a condition of such redemption, was unwarranted and unlawful, inasmuch as the case warrants the presumption and conclusion of law, that these debts were paid; and if not paid, the plaintiffs, who were such creditors, and who had no previous notice of them, were not bound to pay them. And I shall further declare, that the sale by *G. D.* was unlawful and fraudulent, because the notice of sale contained a false assertion, that these 70 acres were covered by a third mortgage, which was upon other lands only, and because no place of sale was specified in the notice, and because the power to sell under the third mortgage upon other lands, was, in itself, null and void, and because the sale was made, after a tender of the sum due upon the two mortgages on the 70 acres, with the costs. And I shall further declare, that *W. G. D.*, the defendant, was a purchaser chargeable with notice of the right of the plaintiffs, and of the tender; and even without notice, he would have been a purchaser, under the circumstances of the sale, subject to the right

of redemption of the plaintiffs; and that *John M'Cloughry,* the original plaintiff, died seized in fee of the said mortgaged premises, subject to the incumbrances chargeable thereon, and that the other plaintiffs are his lawful heirs, entitled to the same rights.   And I shall direct a reference to a master, to state and report the amount due on the two mortgages, and the rents and profits which have, or might have been received by the defendant, *W. G. D.,* and the value of the beneficial and permanent improvements now existing, and made by him thereon, and the injury, waste, and deterioration, which he may have committed, or suffered to be done, &c.

Decree accordingly.