GEORGE HOFFMAN v. REBECCA ANTHONY & others.

The notice of sale under a power in a mortgage, usually required to be advertised by the mortgagee or his assignees in a public newspaper for a certain number of days previous to the sale, is designed to secure the attendance of purchasers of, and a fair price for, the mortgaged estate; and where such a notice was not signed by any one, and gave neither the name of the mortgagor, nor of the mortgagee, nor, correctly, a reference to the page of the volume of Land Records in which the mortgage was recorded, nor even the name of the auctioneer who was employed to sell the estate, it was held to be fatally defective, and, notwithstanding a sale under it, a redemption of the mortgaged estate was decreed to the assignee of the equity; such notice affording to persons who might desire to purchase the estate no means of ascertaining the validity of the title offered to them.

BILL IN EQUITY to redeem two lots of land in Cranston, originally mortgaged, together with two other adjoining lots of land, by James Reynolds and Thomas Parker to Henry Blundell, to secure a promissory note, at three years, of five hundred dollars, of the equity of redemption in which lots the plaintiff was an execution purchaser.

The mortgage, which was dated December 13, 1852, contained a power of sale to Blundell, his heirs, executors, administrators, and assigns, authorizing him or them, in default of payment of said note or annual interest, to sell the lots for the satisfaction of the same, "first giving thirty days' notice of such sale in some one of the public newspapers printed in the city of Providence." In October, 1853, Reynolds and Parker, who held the four lots mortgaged by them as tenants in common, by mutual releases, vested two of the lots in severalty, being numbers 117 and 118 on a plat of part of the Joseph Burgess farm, in Parker, and the other two, numbered 119 and 120 on said plat, in Reynolds, subject to said mortgage; and on the 18th day of March, 1857, Parker released all his interest and equity of redemption in his two lots, numbers 117 and 118, to Sarah K. Reynolds, the wife of James Reynolds. The interest and equity of redemption of Reynolds in the other two lots embraced in the mortgage, being lots 119 and 120 on said plat, was levied upon by two executions, issuing out of the supreme court, obtained against him by creditors of Reynolds, and was, on the 25th day of February, 1858, sold and conveyed to the plaintiff by

the deputy-sheriff charged with the service of said executions. Upon this title, the complainant commenced an action of eject-ment against Reynolds, who was in possession of the two lots, and at the September term of the supreme court obtained judg-ment for possession. The mortgage came by mesne assign-ments to the defendant Thomas E. Anthony, who claimed to hold the same as security for the balance due thereon, amount-ing, as the bill charged, only to about three hundred dollars. On the 11th day of December, 1857, after Anthony had contracted with the East Greenwich Institution for Savings, the then hold-ers of the mortgage, to purchase the same from them, but before he had received an assignment of the mortgage, he advertised the four lots embraced in the mortgage for sale under the power, in the "Rhode Island Weekly Tribune," a newspaper printed in Providence; and having received an assignment of the mortgage on the 6th or 7th day of January, 1859, he sold, on the 12th day of January, 1859, the mortgaged property at auction, for the sum of $320, — he bidding off the same in the name of his sister, the defendant, Rebecca Anthony, and giving her a deed thereof. The notice of sale, advertised as above by Anthony, was as follows: —

" Mortgagee's Sale.

" Will be sold at public auction, on the 12th day of January, 1859, on the premises, by virtue of a power of sale contained in a deed of mortgage, made and executed on the 13th day of December, 1852, and recorded in book 27, page 25, of the records of deeds, &c., in the town of Cranston, the conditions of which have been broken, the following described real estate situated in said Cranston, being lots laid out and described as Nos. 117, 118, 119, 120, on a plat of part of the Joseph Burgess farm, belonging to Edward R. Mitchell, surveyed and platted by Atwater & Schubarth, and recorded in book No. 16, page 575, of the records of deeds, &c., in Cranston, with the buildings and improvements thereon. Sale to commence at ten o'clock."

The bill charged that the sale was advertised by collusion between James Reynolds and Anthony, before the latter had become the owner of the mortgage, in a paper of limited circu-lation, — so that the plaintiff never heard of the sale until the

27th day of January, 1859, fifteen days after it had taken place, when he was casually informed of it; that the reference to the book and page of the Cranston records, in the notice, for the record of said mortgage, is erroneous; that the sale was made on the premises in Cranston, by an auctioneer appointed by the city of Providence; no person beside the auctioneer being present but James Reynolds, Thomas E. Anthony, and a person unknown to the complainant; that no posters were put up or other notice given of the sale than the above advertisement; that the lots were sold together, and bid off by Anthony in the name of his sister Rebecca, for $320, when they were well worth and would have brought, at a sale fairly advertised and conducted, a thousand dollars; and that the sale was collusively contrived and carried on by the defendants, Reynolds and Anthony, for the purpose of cutting off the claim of the complainant to lots Nos. 119 and 120, embraced in said mortgage.

The answer of the defendants admitted the statement of the title on both sides, as made in the bill, — that the sale was advertised by Anthony before he had obtained a transfer of the mortgage, but after he had contracted for it, and with the assent of the East Greenwich Institution for Savings, the then holder of the mortgage; that the notice of sale was as above set forth, and erroneous as to the page of the book of records in which the mortgage was recorded; that the sale was made by a Providence auctioneer, but under the direction of a Cranston auctioneer, who was present at the sale; that the lots were bought at the sale by Rebecca Anthony for $320, being less than their value; one Rice bidding for her, but the deed being executed to her; that she bought at the request of Sarah Reynolds, the wife of James Reynolds, but for herself; that she paid no money to her brother, but gave to him her negotiable promissory note, which has since been taken up; but the answer denied all collusion for the purpose of defeating the plaintiff's equity of redemption, and all fraud whatsoever, alleging that the sale was fairly conducted, and was made for the sole purpose of enabling Anthony, the holder of the mortgage, to obtain out of the mortgaged property what he had paid for the mortgage.

Depositions were taken and read on both sides, bearing upon the allegations of the bill and answer, but as they do not touch the point upon which the case was decided, it is needless to set forth their contents or substance.

*James Tillinghast*, for complainant.

1. The sale is ineffectual to cut off the complainant's right of redemption, — because in the advertisement neither mortgagor nor mortgagee, nor any party connected with the mortgage, is named, and the only means given by which to ascertain under what mortgage the sale is to be made, is the reference to its record, — and this is not correct. This is admitted by the answer. Compare per *Wing*, J., in 1 Mann. (Mich.) 342.

2. Because the advertisement was insufficient, being made by Anthony when he had no title whatever to the mortgage, and while the title was in the Institution for Savings. *Cohoes* v. *Goss*, 13 Barb. 137; *Miles* v. *Bransford*, 1 Mann. (Mich.) 338.

- 3. Because the promise by Kenyon, as treasurer of the Institution for Savings, to the complainant, to inform him before anything was done with the mortgage, rendered any attempted foreclosure without notice to the complainant. entirely ineffectual to bar the complainant's right of redemption. See *Hall* v. *Cushman*, 14 N. Hamp. 171.

4. Because the sale was made in Cranston, by an auctioneer not authorized to sell there. An auctioneer cannot delegate his authority. *Commonwealth* v. *Harnden*, 19 Pick. 482; *Stone* v. *The State*, 12 Miss. 400, (11 U. S. Dig. 332, 333, §§ 56, 57, 58.) Compare Rev. Stats. ch. 117, pp. 270, &c., particularly· §§ 10 to 23. It is evident here that in the language of *Morton*, J., in 19 Pick. 484, *supra*, Doyle did not make this sale as the mere servant or clerk of Moore, but " made the sale himself, having obtained permission for. the purpose, as a cover by means of which to evade the provisions of the statute."

5. Because the sale was otherwise objectionable. Although the answer contains formal denials of collusion and intention to cut off the complainant's rights, yet enough appears, chiefly from the statements of the answer itself, to show the real transaction, viz.: that the mortgagor, mortgagee, and purchaser, are brothers and sisters and the sale was entirely a *family* matter.

They knew of the complainant's title, and that he had applied to the bank for this very mortgage to protect himself, and *because they knew this* they procured the respondent, Thomas E. Anthony, to take this mortgage as a mere conduit through whom to make the sale, the purchase being arranged beforehand. Though knowing the complainant's interest in the matter, no notice is given him of the intended sale. It is advertised in the "Weekly Tribune," where not one in a thousand would see it, and no posters put out. Reynolds himself had the whole charge of the business. No names are mentioned in the advertisement; no one was present at the sale but the auctioneer, the mortgagor, mortgagee, and the person employed by them to bid it off (bid it *in*, we submit.) It is put up and sold at the request either of Reynolds or Anthony in an unusual way, and struck off (or bid in?) for just the amount of the mortgage, and at about or less than one third its value; and no money paid at the time.

*Thurston & Ripley*, for the respondents.

1. The answer denies fraud or collusion, and all the facts admitted or proved are reconcilable with good faith, and if so, the complaint must fail. 1 Story's Equity, 222, § 190; *Rogers v. Cruger*, 7 Johns. 605.

2. If this is a defective execution of the power contained in the mortgage deed, it is such a defect as a court of equity will supply. *Bur v. Hatch*, 3 Hamm. (Ohio) Rep. 529; Russ. & Myl. 418; *Schenck v. Ellingwood*, 3 Edw. Ch. 175; *Beulram v. Rine*, 2 Call. 387; 1 Story's Equity, § 176; Sugden on Powers, ch. 6, (4th ed.) 353, 358. The agreement for the transfer of the mortgage was made with the East Greenwich Institution for Savings before the advertisement was inserted. The treasurer of said institution had authority to make the transfer to Thomas E. Anthony.

3. The "Weekly Tribune" is a paper of average circulation. The advertisement was substantially correct under the power of sale, and the description was such as that no one could be deceived. No particular form of notice of a sale is prescribed by law, under a deed of trust; it is sufficient if the description of the land is reasonably certain, so as to inform the public of the

property to be sold. *Newman* v. *Jackson,* 12 Wheaton, 570; 7 Ib. 363; 2 Kent, 710; *Calcraft* v. *Roebuck,* 1 Vesey, jr., 221; *Dyer* v. *Hargrave,* 10 Vesey, 505.

4. The lots were sold under the authority and by the direction of Silas Moore, an auctioneer of the town of Cranston. An auctioneer may employ another to sell under his control. *Commonwealth* v. *Harnden,* 19 Pick. 482.

5. In a mortgagee's sale, inadequacy of consideration is not enough to reopen it. *Tripp* v. *Cook,* 24 Wendell, 143; *Osgood* v. *Franklin,* 14 Johns. 527; 1 Madd. Chan. 98; Select Chan. Cas. 7; 10 Vesey, 292; 2 Atk. 251; 2 Bro. Ch. Cases, 179. Besides, it was upon the evidence an average sale for a mortgagee's sale.

6. The respondent is a *bonâ fide* purchaser, who has as high a claim to assistance as any other person can have. 1 Story's Equity, § 108. If the equities are equal, a court of equity is silent and passive. Story's Equity, § 176.

BRAYTON, J. The plaintiff in this bill claims the right to redeem the premises described therein from the mortgage execution by James Reynolds and Thomas Parker, on the 13th day of December, 1852, to Henry Blundell, which mortgage, the bill charges, came to the defendant, Thomas E. Anthony, by various mesne assignments, and that the said mortgage is still a subsisting mortgage upon the estates. The bill, anticipating the defence to be set up to his claim for redemption, that the mortgage had been foreclosed by sale under the power contained in the mortage, and to show that the power had not been executed, at least so executed as legally to vest the estate in the purchaser to whom it was struck off at the auction sale, sets out, among other grounds of objection to the validity of the sale made by the said Anthony, the assignee of the mortgage, that the advertisement, caused to be published by the said Anthony in the public newspaper, is not signed, and does not contain the name of any party connected with the mortgage; and charges, that the reference in said notice to the place where said mortgage is recorded, is not correct, the mortgage not being there recorded. The answer admits that this was the notice given, and that it was erroneous in the particulars charged; that although it stated

that the mortgage was recorded at page 25 of Book No. 27, in Cranston, it was not there recorded, but was recorded on page 325 of that book. Now the plaintiff claims that such a notice as here appears to have been given, is not sufficient to warrant a sale; that it is not a fair compliance with the condition imposed upon the power of sale, to give thirty days' public notice.

The power in this case was by the mortgagor vested in the mortgagee, if the mortgagor should make default in payment at the times appointed, to sell the estate, or so much as might be necessary to discharge the debt upon condition, but that he should give public notice of such sale for thirty days. This power is annexed to the estate of the mortgagee; and every assignee, by virtue of the assignment to him thereof, is clothed with this power, and upon the like condition of notice. The mortgagee, so long as he held the estate in mortgage, and every successive assignee while he held it, became a trustee, therefore, with a power to sell and appropriate to himself so much only as might be necessary to discharge the debt due from the mortgagor. He was to sell no more than might be reasonably necessary to discharge the debt. If he sold more from any necessity, he was to hold the balance above the mortgage debt for the mortgagor, and if any assets remained unsold, it remained to the mortgagor.

The mortgagor did not require and had not provided, that before making sale of the estate or any part thereof, any notice should be given to him of such intended sale. The only notice provided for was that by advertisement in a public newspaper, and which was intended to invite purchasers. This was its great and only purpose; and as the mortgagor had provided no notice to himself upon which he could give a wider circulation to the advertisement, was of the utmost importance to him. He had a deep interest in having such notice given as would be likely to attract purchasers who would be willing to give a fair price for the estate. This being the purpose of the notice, it imposed a duty upon the assignee to see that the notice was given, such as would reasonably accomplish the end designed. This duty is expressed by the Chancellor in the case of *Matthie* v. *Edwards*, 33 Eng. Chan. R. 465, in reference to a notice under a like

power, in this language : " A mortgagee having a power of sale cannot, as between himself and the mortgagor, exercise it in a manner merely arbitrary, but is bound to exercise some discretion not to throw away the property, but to act in a business-like manner with a view to obtain as large a price as may fairly and reasonably, with due diligence and attention, be under the circumstances attainable."

The same view, as to the duty of the mortgagee in giving notice, is expressed in *Burnet* v. *Deniston*, 5 Johns. Ch. 35 ; *Longworth* v. *Butler*, 3 Ill. 32. This duty, as it seems to us, is not performed by the notice published in the present case. The advertisement professes to give notice that at a certain time and place these lots of land, which are sufficiently described to inform purchasers what is proposed to be sold, will be sold by somebody under a certain power which may be found in the records of Cranston, in a certain place there. This reference to the records is the only source pointed out by the notice of any information as to the terms of the power, or of the conditions upon which it might be exercised; and when an inquirer goes there, no such record and no such information is to be found. Whether there is any such power he has no means to ascertain. It is not even stated who made the mortgage or to whom it was made. Had this been stated, he might have found the deed somewhere on the records; but without it, he is only to search for a mortgage of lots 117, &c. made by somebody. The record in fact utterly fails to furnish him with any information. He proposes to inquire of the person who advertises the sale. But who is he? The notice does not state this. He cannot inquire of the mortgagor or of the mortgagee, for he has no notice who they are. As a last resort it might occur to him to inquire of the auctioneer, but on looking at the advertisement he finds that it is not disclosed who is to conduct the auction sale. All that he can know is, that certain lots of land, which he can view, are proposed to be sold by somebody, not named, under a power from some other person, not named. Whether there exists any such power, or whether the contingency has arisen upon which it is to be exercised, or what the contingency is, he cannot know from any source of information given

him.    He has no means to form an opinion even whether any-
thing could be sold, and whether it would be worth his while
to attend at the time and place notified.    Few purchasers,
probably, would think it was.    Being pointed to the records for
the terms of the power, they should have the means of exam-
ining, as they would desire to do, before bidding.

It is no matter of wonder that with such a notice as this no
other persons attended this sale, as the evidence shows they did
not, than such as derived their information from other sources
than this advertisement, — none but such as were specially in-
vited to attend, viz : the auctioneer, the holder of the mortgage,
one of the original mortgagors having then no title, and one
other person specially requested to bid for the defendant Re-
becca Anthony.    Nor is it strange that the estate should, under
the circumstances, have been struck off for one third of its fair
value.    Such a notice would be likely to produce such a result,
or at least was not adapted to produce any other.    In giving
such notice it cannot with propriety be said that the assignee,
in the exercise of the power and trust with which he was
clothed, acted in a business-like manner with a view to obtain
as large a price as might reasonably be obtained under the cir-
cumstances with due diligence and attention on his part, or in
common fairness towards his cestui que trust.

It must be declared that the plaintiff is in this case entitled
to redeem, that the said mortgage is not foreclosed, and the
case must be referred to a master to ascertain the amount due
upon the mortgage.