SMITH S. VENTRES *et al.*

*v.*

JUNIUS B. COBB *et al.*

| 105 | 33 |
| 128 | 132 |
| 105 | 33 |
| 174 | 250 |

*Filed at Ottawa November 20, 1882.*

1. TRUSTEE—*in deed of trust is agent of the debtor as well as of the creditor.* A trustee in a deed of trust is the trustee of the debtor as well as of the creditor, and his relation imposes the duty of acting fairly, honestly, and for the best interests of all parties having rights in the property pledged, or fund, and to use all reasonable efforts to protect their several interests. For this purpose he must use the same efforts that prudent men usually employ in the protection of their own interests.

2. TRUSTEE'S SALE—*set aside for fraud and oppression.* The owner of certain premises, designated as blocks 5 and 6, gave a deed of trust thereon to secure the purchase money, after which he sold the same to A and B, who assumed the payment of the incumbrance, and they conveyed block 5 to C, who conveyed the same to D, who paid the creditor half of the debt secured by the trust deed. The remaining part of the debt, about $700, being unpaid, both blocks were advertised for sale by the trustee. On the evening before the day appointed for the sale it was agreed between the creditor and A, that A should purchase lot 6 for a sum sufficient to discharge the balance due under the incumbrance. On the morning of the sale it was agreed by the creditor and trustee to postpone the sale one hour, to enable A to get a certified check from the bank with which to pay his bid, and a messenger was dispatched for that purpose. Before the expiration of the time agreed on, the trustee offered and sold the property. Block 6 was sold for $505, and block 5 for $218. A returned within the hour and offered to pay the entire debt, which was refused. The purchaser of block 5 refused to complete his purchase, and the same was afterwards sold: *Held*, on bill filed to set aside the sales, and to redeem, that the court erred in dismissing the bill, and that the sales should be set aside for unfairness and want of integrity on the part of the trustee and creditor.

3. Where there is a mortgage or deed of trust given on two separate parcels of land, which are afterwards acquired by different persons, and one of them pays his full share of the incumbrance, it becomes the duty of the creditor to protect the rights of the one so paying, and his tract is released in equity from the incumbrance, unless the other tract, by the use of reasonable effort, does not sell for enough to satisfy the balance of the incumbrance.

4. SAME—*can be made only for default.* The payment of the debt secured by a deed of trust defeats the power of sale, and a purchaser at such sale must see to it that the grantor in the deed is in default, and that

3—105 ILL.

some part of the debt is due and unpaid, and it seems also that a tender of payment before sale will render the sale invalid.

5. NOTICE—*to agent is good as to principal.* Where an agent purchasing land at a trustee's sale is informed of the illegality of the sale before making payment, such notice will be good against his principal, on bill filed to set aside the sale.

6. TENDER—*whether sufficient.* After a sale of several parcels of land under a power in a deed of trust, a purchaser of one of the parcels from the grantor in the deed offered to the creditor and to the trustee to discharge the balance due under the incumbrance at the time of the sale in order to the removal of the lien from his part of the premises, having in his hand, at the time, money which he offered to pay over for the purpose indicated, and claiming that the sale had been made under circumstances such as did not deprive him of the right thus to discharge the lien. Both the trustee and the creditor refused to receive the money, not because the amount or kind of money was not correct, but because they had no power, as the matter had gone beyond their control. The tender was held to be good.

APPEAL from the Superior Court of Cook county; the Hon. GEORGE GARDNER, Judge, presiding.

Mr. ARTHUR D. RICH, for the appellants:

A trustee must act in good faith, and protect the interests of both parties. He must not allow the creditor to force a sale at an inadequate price, in the absence of other bidders. *Meacham* v. *Steele,* 93 Ill. 135; 2 Jones on Mortgages, sec. 1906; *Vail* v. *Jacob,* 62 Mo. 130.

A tender of payment of the sum due on the notes was a discharge of the lien of the deed of trust. After such tender a sale by the trustee will be set aside. 2 Jones on Mortgages, secs. 893, 1799; *Wheelan* v. *Reilly,* 61 Mo. 565; *Flower* v. *Elwood,* 66 Ill. 438.

These trusts being capable of great abuse unless closely watched, sales under them will be set aside when oppression, unfair dealing, or sacrifice of the property is shown. *Waterman* v. *Spaulding,* 51 Ill. 425; *Coswell* v. *Ross,* 33 id. 244; *Taylor* v. *Hopkins,* 40 id. 442; *Warnecke* v. *Lembca,* 71 id. 91; *Mason* v. *Ainsworth,* 58 id. 163.

Mr. JAMES S. MURRAY, for the appellant P. N. Haskell:

The evidence clearly shows the sale was made with extraordinary haste, and long before the time the trustee and creditor had agreed to wait. The violation of the agreement to wait but one hour, and the sale at so great a sacrifice, amount to fraud and oppression.

Hill, the agent of Wier, had notice of all the circumstances before he paid any money or received a deed for the property, and the principal can not be protected as an innocent purchaser.

A trustee must act in good faith, impartially, and with diligence and reasonable discretion. He must use every requisite degree of diligence to bring the property to sale under the best possible circumstances. *Quarles* v. *Lacy*, 4 Munf. 251; *Rossett* v. *Fisher*, 11 Gratt. 492; *Lane* v. *Tidball*, 1 Gil. (Va.) 132; 11 Leigh, 556; *Hunt* v. *Bass*, 2 Dev. Eq. 292; *Johnson* v. *Eason*, 3 Ired. Eq. 330; *Singleton* v. *Scott*, 11 Iowa, 589; *Jenks* v. *Alexander*, 11 Paige, 619; *Outwater* v. *Berry*, 2 Halst. Ch. 63; *Richards* v. *Holmes*, 18 How. 143.

Mr. J. W. WAUGHOP, for the appellees:

The notice of the sale was ample, and the sale was kept open after the hour from thirty to forty minutes, and the bidding was unobstructed.

The record fails to show that Wier, or Hill, his agent, had any notice of the matters complained of in the bill, and there is nothing in the record which, if known, would affect the sale. An innocent purchaser is protected. *Hosmer* v. *Campbell*, 98 Ill. 572; *Jenkins* v. *Pierce*, 98 id. 646.

Messrs. J. P. & T. R. WILSON, for the appellees Hambleton and Eoff:

The bill alleges no defect or irregularity in the sale of block 5 in December, 1879, under which Hambleton and Eoff claim title to the block.

The tender of the amount due under the trust deed in February, by Ventres, did not satisfy the debt.

The sale of block 5 in December, 1879, is not dependent upon the validity of the sale of block 6 in February, 1879.

Mr. JUSTICE WALKER delivered the opinion of the Court:

The bill in this case was filed by appellants, against appellees, for the purpose of setting aside the sale of two tracts of land in the south addition to Englewood. The sales were made at different times, and by different persons, named in a trust deed executed by D. H. Pike to Junius B. Cobb, to secure the sum of $4000, with interest at eight per cent per annum, payable to appellee Wenham. The trust deed contained a provision that "in case of the death, inability or refusal to act of the party of the second part, Lucius M. Cobb is made successor in trust, with like power and authority, etc.; and in case of the death, absence, or inability or refusal to act, of said party of the second part and Lucius M. Cobb, Benjamin E. Gallup is appointed successor, with like power and authority," etc.

The deed of trust was given to secure a balance of the purchase money of the property from Wenham. It had all been paid but $500, and some accrued interest, amounting in the aggregate to about $683.25, at the time the first sale was made, on the 25th of February, 1879. Appellants Ventres and Haskell subsequently purchased the premises of Pike, on a consideration expressed in the deed of $10,000, and assumed the unpaid portion of this incumbrance. They conveyed block 5 to one Perry, on the consideration of $5000, as expressed in the deed, and Perry, on a like consideration mentioned in the deed, conveyed it to appellant Mrs. Huntington, on the 22d of January, 1879. It is claimed that when she purchased, all of the indebtedness but $500 of principal, and about $200 of interest, had been paid. The

lien to secure its payment was on both blocks 5 and 6, embracing ten acres.

A receipt from Wenham to Mrs. Huntington, for a payment made by D. L. Perry, for $594, on the indebtedness secured by this trust deed, was read in evidence, and it is claimed paid the incumbrance on her lot. It is claimed that block 6 being ample security for the balance, she in equity was fully released, as well as block 5, from further liability. Haskell being unable to meet his part of the incumbrance, and the money not being paid, Lucius M. Cobb, claiming to be successor of Junius B., advertised the property for sale, February 25, 1879. On the evening before the sale, Wenham and Ventres met, and it was concluded that Ventres should purchase block 6 in full satisfaction of the lien on the two blocks. Next morning they, with Cobb and others, met at the place of sale, and Ventres asked time to send to the bank to procure a certified check for the money, with which to pay the amount of the lien when he became the purchaser. He claims that Cobb agreed to keep the sale open until eleven o'clock, and this was assented to by Wenham and his attorney. They contend that the agreement only extended it to a reasonable time to send to the bank to procure the check. A messenger was sent to the bank, and Ventres left, and was absent a short distance from the place, and, as he claims, in sight of Cobb and Wenham. On his return, together with the messenger sent for the certified check, (having procured it,) the sale of both blocks had been made. Wier purchased block 6, at $505, represented by Maston Hill, as his agent, and block 5 was sold to John Anderson, at $218. Anderson learning the facts, and that the sale would be contested, declined to pay the amount bid.

Appellants claim that this sale was made within fifteen minutes after the agreement to keep the sale open was made, and their witnesses so testify; but appellees claim, and some of their witnesses so testify, that it was thirty-five minutes.

Immediately after the sale was closed, Ventres tendered the check for $723.25, as payment in full for debt, interest and costs, to Wenham, but it was declined, and he was told the sale had been made, and they could afford him no relief. He at once saw Cobb, and protested, and saw Hill, who had bid in block 6 ·for Wier, and claimed that the sale was in fraud of his rights. That afternoon he offered to pay to Wenham and Cobb the full amount of debt, interest and costs, in currency, but he declined to receive it. Ventres had the money in his hand when he made the offer, but it was declined. Gallup afterwards advertised ·block 5, and sold it, in the following December, to Hambleton and Eoff, for $375. Gallup claimed to act as trustee under the deed.

On these facts the court below dismissed the bill, and complainants appeal, and assign errors.

Cobb, who was claiming to be the trustee under the deed, seems to have considered himself as having been appointed and acting solely in and for the interest of Wenham. He acted as though he was not required to act fairly towards the debtor, or·those having derived title from him, and having an interest in the property pledged for the payment of the money. The trustee, in such cases, is selected by the parties because they have confidence in his honesty, fairness and competency. He is agreed on as trustee by both debtor and creditor, and becomes equally the trustee of both. (*Meacham* v. *Steele*, 93 Ill. 135.) The trustee is appointed by the debtor, and derives all of his power from him, and it can require no authority to prove he is the trustee of the debtor. But the relation of trustee imposes the duty of acting fairly, honestly, and for the best interests of all parties having rights in the property, but singularly enough, such trustees frequently, if not generally, seem to suppose they are the mere agents of the creditors, to aid them in obtaining advantages over the debtor, and not unfrequently lend themselves to the creditors to oppress and wrong the debtor. Such trusts have been the

source of abuse and oppression to such an extent, that the legislature, no doubt for that reason, was largely influenced in prohibiting sales under such powers, and has required them to be foreclosed in equity, that the rights of those making such instruments may be protected. (See Pub. Laws, 1879, page 211.) Of this doctrine there can be no question. All the authorities, and they are numerous, hold that a trustee must act with the utmost good faith with all parties having an interest in the property or fund; that it is his duty to use all reasonable efforts to protect their interests; that he must, for that purpose, use the same efforts that prudent men usually employ in the protection of their interests. This has always been demanded of persons exercising trusts, and nothing less will satisfy the requirements of the law.

Did Cobb use that diligence in this case? He, as a part of his duty, was required to procure the best price the property could be made to bring, with reasonable effort. Did he discharge this duty? The evidence shows he did not. Ventres informed him that he would bid the whole amount of the debt, interest and costs for block 6, if he would keep the sale open till eleven o'clock,—only one hour. He knew that Ventres had gone, or sent a messenger, to a bank, to procure a certified check for the amount, but he failed to wait, as is admitted, more than thirty-five minutes, and as we think the preponderance of the evidence shows, not more than fifteen minutes. He sold it for more than $200 less than Ventres told him he would bid if he was afforded time to get such a check as was demanded by Cobb, and the evidence shows the check came but a few minutes after the sale was closed. Can any one believe that had this property been his own he would have sold it at this sacrifice, to say nothing of the large sacrifice from its true value, as indicated by the consideration named in the deeds? Then he unnecessarily sold block 5 for $218,—property for which Mrs. Huntington had, but a short time before, paid, as is named in her deed, $5000. Is

it possible to hold this is good faith to Ventres or to her? It has the appearance, when all the facts are considered, that there was a combination between Wenham, Cobb, and the purchasers, to wrong and oppress those having the title to the property; that there was a scheme by which to deprive them of their property at a vast sacrifice, under the mere forms of law; that the trustee, instead of protecting their interests, used the power conferred by the deed to oppress and wrong them,—to perpetrate injustice and iniquity. The legislature did not deprive trustees of power of sale under such deeds any too soon, when they were being used as engines of oppression and fraud.

Again, it was the duty of Cobb to protect the rights of Mrs. Huntington. She had paid her full share of the incumbrance, and her block was released in equity, unless the other property could not, with reasonable effort, be made to bring enough to satisfy the balance. Cobb was offered enough for the purpose if he would keep the sale open for an hour, and he admits that he agreed to do so for a sufficient time to procure the check. He knew that it had been sent for, and that Ventres was within call, and still he sold property worth, as appears from the consideration named in the deeds in evidence, at least $10,000, for $723, and the block costing Mrs. Huntington, a short time before, $5000, was sacrificed at $218. Is this as honest, prudent men transact their own business? Most assuredly not. Can there be any other inference than that Cobb intended to perpetrate a fraud, or was the mere instrument in the hands of Wenham to perpetrate a gross wrong and fraud? His conduct is attempted to be justified because, it is claimed, Ventres was at least a few minutes tardy in procuring the check. Such sharp devices can never be sanctioned by a court of justice. Even if Cobb had made no promise to keep the sale open for any period of time, it was his plain and simple duty to have done so, as there was a promise from Ventres to bid the amount .

of debt, interest and costs on block 6, and become the pur-
chaser. It is merely sticking in the bark, to contend· about
a few minutes of time when important interests were con-
cerned. It was the duty of Cobb to have permitted Ventres
to bid in his own property, under the circumstances, and it
was unjust to take such an advantage of him, and to thus
deprive him of such valuable rights and visit upon him such
wrong,—and this, too, by the man selected by the grantor in
the trust deed to protect his rights, and those who might
succeed to them.

Perry and Haskell both, at the sale, protested against clos-
ing it, because Ventres had gone for the money. This Hill,
the agent of Wier, must have heard, because he was there,
and had bid on the property; but if it could be doubted that
he did, he was fully informed of the fraud before he paid the
money and obtained a deed for the property. This rendered
Wier a purchaser with notice. Notice to an agent is notice
to his principal in all such transactions. In the light of this
evidence Wier must be held, constructively, a party to the
fraud, because his agent went on and completed the purchase
after being notified of the facts, when he could have refused
to proceed with the purchase without incurring the slightest
liability. He did not refrain, but entered into and aided in
its consummation. Wier being thus charged with notice, the
conveyance to him should have been set aside as to that block.

It is the well settled law that the payment of the debt,
secured by a mortgage with a power of sale, defeats or ends
the power. The payment of the debt extinguishes the mort-
gage and the power. (*Redmond* v. *Packenham,* 66 Ill. 434;
*Lycoming Fire Ins. Co.* v. *Jackson,* 83 id. 302.) And it has
been held that a tender of the amount of debt, interest and
costs extinguishes the power in a mortgage to sell the prop-
erty. (*Bennett* v. *Deninston,* 5 Johns. Ch. 35; 2 Washburn
on Real Prop. p. 79, sec. 10.) No distinction in this respect
can be taken between a mortgage and trust deed with power

to sell. The power is the same, its source is the same, its purpose is the same, and it can be exercised only in case of a default. There never is, in such a case, a particle of power to sell until there is a default in payment  Without the default there is no power. That depends for its exercise on the contingency of a default. If there is no default, and the trustee assumes to sell, all persons purchase at their peril. Bidders must see to it that at least a portion of the debt thus secured remains due and unpaid, and that it is in default, according to the terms and conditions imposed by the power. In this case, on the day of the first sale Ventres tendered the full amount of the debt, interest and costs, to both Wenham and Lucius M. Cobb. Anderson, who purchased block 5, refused to pay the money bid by him, and complete his purchase, because he had learned the facts. The sale of block 5 having fallen through immediately after the tender was made, what was then the attitude of the case? A tender had been made of the amount of the incumbrance on both blocks of the property, the sale of one had fallen through, and the other had been fraudulently made, and in equity should have been canceled, and block 6 should not have been conveyed to Weir. This, then, in equity, was as though no sale had been made, and the tender was therefore in time, and was good. If it be said that the money was not shown or counted, it may be answered that Ventres had the money in his hand, and offered to pay it in discharge of the incumbrance, but both Wenham and Cobb refused to receive it,—not because the amount or kind of money was not correct, but because they claimed they had no power, as the matter had gone beyond their control. Had they desired to avoid the effect of the tender they should have demanded the money, and had Ventres failed, or had he refused, then the operation of the tender would have ceased.

There being a sufficient tender shown, Gallup had no power to make the sale when he did. It was without power, and

Mrs. Huntington has the right to have the deed to Hambleton canceled, and a reconveyance to her, and the court erred in refusing to render such a decree. Equity requires that the balance of the debt should be paid into court on setting aside the sales, and it should be distributed between the purchasers in proportion to the amount severally paid by them at these purchases.

The decree is reversed and the cause remanded.

*Decree reversed.*