### URSULA ROSEDOFSKY *v.* NELLIE COROSA, *Adm'x.*

*John D. Warren* and *Albert Terrien* (*Mr. Terrien* orally), for the plaintiff.

*Ivory C. Eaton* (by brief and orally), for the defendant.

PAGE, J.   On September 1, 1940, fire completely destroyed the buildings on the plaintiff's farm.   At that time the defendant's intestate held a mortgage upon the premises on which there was due the sum of approximately $3,000.   The buildings and some of the contents were insured in three companies, and each policy was payable in case of loss to Corosa, as his mortgage interest might appear.

The evidence, taken most favorably for the plaintiff, warranted the findings about to be stated.   After the fire, the plaintiff made a parol agreement with one Nintemen to sell the land for the sum of $2,300, the deed to pass upon receipt of the insurance checks about October 15, when the title could be cleared by the payment of the Corosa mortgage and a second mortgage of $500 payable to a person not a party to this action.   Corosa was informed of these facts, and he knew that the expected insurance adjustment and his discharge

of the mortgage as the result of that adjustment were necessary conditions precedent to the sale by the plaintiff to Nintemen.

The insurance checks, totalling $5,700, arrived on October 24. Arrangements were immediately made for the plaintiff and Corosa to meet at a real estate office in Nashua on the morning of October 25 in order to effect a settlement of the Corosa mortgage. They met, the amount due Corosa was figured at slightly more than $3,000 by the real estate agent, and Mrs. Rosedofsky and Corosa promptly and amicably agreed that the amount was correct. The insurance checks, endorsed by the plaintiff, were then handed to Corosa for his endorsement in order that they might be cashed and the money divided in accordance with the amount agreed to be due to Corosa. At this point Corosa demanded that the plaintiff pay to one Goy, a perfect stranger to the business between the parties, the sum of $200 that Goy claimed the plaintiff's husband owed him. The plaintiff refused to pay an obligation not owed by her. After "a lot of talk," the real estate agent asked Corosa why he did not settle, adding "Here are the checks." To this it was testified that Corosa replied "Well, how do I know the checks are good?" But it does not conclusively appear that Corosa's refusal to go further with the settlement rested upon fear of the checks rather than his desire to force the plaintiff to pay $200 that she did not owe.

The checks were of varying amounts, one for $3,000, one for $1,500, the other for $1,200. They were issued by the Continental, the Grange Mutual, and the Hollis Mutual, the latter two being domestic companies whose checks could presumably be readily cashed. It does not appear which amount was insured by either of the three companies. But it does appear that all three checks were paid in December, when Corosa finally endorsed them, and that they were still good in spite of the chances taken by delay. As far as appears, they would have been honored and cashed by a Nashua bank on October 25 if Corosa had endorsed them then.

The plaintiff had arranged to give Nintemen his deed on the afternoon of October 25. Upon Corosa's refusal to endorse the checks, she got Nintemen to consent to wait a few days longer. On the afternoon of October 28, the plaintiff and Corosa again met at the real estate office. The real estate agent telephoned a bank and asked leave to come after closing hours with the checks, and again presented the checks for Corosa's endorsement. Meanwhile Goy had come in with a lawyer to get his $200, which again the plaintiff refused to pay. There was more talk. Corosa again refused to en-

dorse, and the conference broke up. Nintemen declined to wait longer for his deed from the plaintiff, and the plaintiff immediately sued Corosa. Corosa has since died, and his administratrix is defending the action.

It is obvious that on the facts stated the jury could find that Corosa's refusal to endorse the checks was not because of any question as to the amount due him, or of any doubt as to the "goodness" of the checks; that his refusal to go further with the settlement did not depend upon the notion as now claimed, that they were not a technical legal tender for the debt due him; but that he refused because the plaintiff declined to pay to a third party $200 that she did not owe him.

If legal tender be necessary in some cases in order to warrant recovery by a mortgagor in a claim against the mortgagee for damages resulting from a refusal to discharge the mortgage, this case is not such a one. By the terms of the mortgage, agreed to by both parties to it, the plaintiff was required to keep the property insured against fire with the loss, if any, payable to Corosa as his interest might appear. The well-known course of business in case of such loss, is for the insurer to issue for the loss a check payable to both mortgagor and mortgagee. This results in protection not merely for the insurer, but for mortgagor and mortgagee alike. The resulting situation is marked by relationships in which mortgagor and mortgagee have certain relative rights and duties. Before the mortgagor can make a legal tender of the amount he owes the mortgagee, it is notorious that in many, if not most cases, the check must be endorsed by the mortgagee. Under these circumstances, Corosa could not, except for reasonable cause, decline to endorse the checks. Whatever course he might reasonably take, such as deferring delivery of his discharge pending collection of the checks by a bank, the discharge meanwhile being held in escrow by the bank, it does not conclusively appear that he took any reasonable course at all. On the contrary, it could be found that wholly unreasonably he held up a settlement of his claim against the plaintiff, knowing that she might lose by delay, and that he took the course he did for the sole purpose of driving her into paying to a third party money that she did not owe.

If the plaintiff had made a legal tender to Corosa of the amount due and Corosa had refused to discharge the mortgage unless he were paid some other debt due from the plaintiff to him, but not secured, the condition imposed by Corosa would have been unlawful. *Burnet*

v. *Denniston*, 5 Johns. Ch. 35, 40. No less unlawful would have been the condition put upon a discharge or the endorsement of the checks that the plaintiff should pay a debt, whether hers or her husband's, due to a third party. Reasonable men could find that Corosa attempted to impose such a condition and that he had no serious question about the character of the checks. If so, he waived a legal tender, and it does not matter whether the checks presented to Corosa were legal tender or not. *Lewis* v. *Lee*, 75 Ind. App. 263; *Ford* v. *Stroud*, 150 N. C. 362; *Washington Exchange Bank* v. *Smith*, 23 Ga. App. 356 (reversed on another point, 149 Ga. 650). "A tender is unnecessary where it would be an idle ceremony." *Morgan* v. *Ibberson*, 215 Minn. 293, 295. "If, when there is an offer to pay, the party, to whom the offer is made, refuses absolutely to receive the money, the objection, that the money was not brought forward, is waived." *Sargent* v. *Graham*, 5 N. H. 440, 441. We think that the principle is the same when the refusal is made upon a condition that the creditor has no legal right to impose. The principle has been stated to rest upon an estoppel to take advantage of a failure to tender the proper amount, where the creditor demands more than the amount due. *Dunlevie* v. *Spangenberg*, 121 N. Y. S. 299, 312.

Upon the record before us, it might at least be found that Corosa placed an unreasonable and unlawful condition upon his endorsement of the checks that were provided for the protection of all interests, the plaintiff's as well as his own; and that he improperly deterred the plaintiff from making the legal tender of whose lack his representative now complains. The complaint is ineffectual, since Corosa's refusal was findably so unreasonable as to amount to a waiver of legal tender.

If the plaintiff had tendered Corosa thirty-one $100 legal tender notes, Corosa could not, without her consent, have appropriated any part to the Goy claim. 2 Jones, Mortgages (8th *ed.*) s. 1164. The plaintiff being ready, except for Corosa's endorsement, to procure $5,700 in money, more than sufficient to discharge the mortgage, Corosa could not reasonably stipulate as a condition for the cashing of the checks that the plaintiff should pay Goy $200. Such a stipulation, if found to have been made, amounted to a complete waiver of every formality of legal tender by the plaintiff. She could not be held to be under any duty to produce a legal tender if Corosa let her know that he would do no business to effect a settlement except upon the performance of some condition not stipulated in the mortgage or implicit in the situation. Yet on this record it could be found that

he did precisely that. If the plaintiff was damaged because Corosa attempted any such unlawful "holdup," she may recover. She had no obligation, because of any technical requirement of legal tender, to choose between losing a parol contract for the sale of her land and paying under compulsion a debt that she did not owe. The mortgagee, however, had an obligation not to damage her by making her choose between two losses as he findably and knowingly did. He could not complain, having forced the situation on her, that she chose as she did, even though the result be that she lost $1,300 instead of $200.

*New trial.*

All concurred.