ISAIAH V. WILLIAMSON *et al.*

*v.*

ISAAC STONE *et al.*

*Filed at Springfield April 5, 1889.*

1. DEED OF TRUST—*with power of sale—trustee as the representative of both parties.* Where a trust deed is made to secure a debt, the trustee named therein is the representative, not only of the owner of the debt, but also of the maker of the deed. He is the agent of both the creditor and the debtor. His duty is to act fairly toward both, and not exclusively in the interest of either. The law requires the conduct of such a trustee to be absolutely impartial, as between the two parties whom he represents. Hence, his relations with one of them ought not to be of such a character as to tempt him to neglect the interest of the other.

2. SAME—*trustee fixing amount of bid.* It is not proper for a trustee appointed in a deed of trust, to direct the representative of the creditor what bid he shall make, but it is his duty to offer the property at public auction, in such a way as to make it bring the highest possible price, and to leave the parties to decide for themselves what they will offer for it.

3. SAME—*setting aside trustee's sale—redemption—in equity.* A trustee after the sale wrote to the creditor: "We bid the property off for $9000, and shall take judgment for the balance of about $4000. * * * My impression is, we had better get a quitclaim deed from Mr. S. (the debtor,) and, if you desire, will have one sent to him to sign. I did not bid the whole amount on the property, as I thought, by having four or five thousand dollars hanging over him, he would be more willing to give us a deed of the property." It appeared that the trustee was the confidential adviser and the business agent of the creditor, and employed one of his attorneys to bid on the property, and directed the amount of the bid at much less than the value of the property, for the purpose of forcing the debtor to make a deed : *Held,* that the action and conduct of the trustee were such as to require the setting aside of the sale and allowing a redemption.

4. A court of equity will always examine with the closest scrutiny a sale that is made under the power contained in a trust deed, and when the rights of third persons have not intervened, redemption from such a sale, conditioned upon the full payment to the holder of the indebtedness of all that is due him, will be allowed, when there is evidence of any such unfairness on the part of the trustee, whether intentional or not, as has resulted in injury to the debtor.

5. LACHES—*knowledge of the facts, essential.* Where the facts relied on to set aside a trustee's sale of property under a power in a trust deed are not discovered until after the filing of the original bill, and they are, when discovered, set up by an amended bill, *laches* will not be imputable to the complainant.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Messrs. GREGORY, BOOTH & HARLAN, for the appellants :

No request by the beneficiary is necessary to authorize a trustee to make a sale. *Booth* v. *Wiley,* 102 Ill. 84.

The trustee is not bound to delay a sale to wait for a more favorable time. 2 Jones on Mortgages, sec. 1875; *Franklin* v. *Green,* 2 Allen, 519; *Davy* v. *Durrant,* 1 DeG. & J. 535.

Inadequacy of price, unless so gross as to raise a presumption of fraud, is no ground to set aside the sale. *Jenkins* v. *Pierce*, 98 Ill. 646; *Hoyt* v. *Pawtucket Institution*, 110 id. 390; *Hoodless* v. *Reid*, 112 id. 105.

The sale will not be set aside for mere irregularities, when fairly and honestly conducted. *Dawkins* v. *Patterson*, 78 N. C. 384; *Markey* v. *Langley*, 92 U. S. 142; *Smith* v. *Black*, 115 id. 308.

The appellee is not entitled to redeem, from his long acquiescence, and *laches*. *Insurance Co.* v. *Boggs*, 121 Ill. 119; *Burr* v. *Borden*, 61 id. 389; *Dempster* v. *West*, 69 id. 613; *Bush* v. *Sherman*, 80 id. 160; *Gibbons* v. *Hoag*, 95 id. 45; *Jenkins* v. *Pierce*, 98 id. 646; *Hoyt* v. *Pawtucket Institution*, 110 id. 390; *Howe* v. *South Park Comrs.* 119 id. 101.


Mr. WILLIAM C. GOUDY, for the appellees:

This is not a bill to set aside a sale, but is a bill to redeem from a mortgage which has not been foreclosed.

Phelps was disabled from executing the power of sale as a trustee. He was acting for Williamson, and seeking to promote his interests. He could not occupy a double position. *Miles* v. *Wheeler*, 43 Ill. 126.

Sales under a power being liable to abuse, are watched jealously by courts of equity. *Burr* v. *Borden*, 61 Ill. 389; *Longwith* v. *Butler*, 3 Gilm. 33.

There was no actual sale, but only one of form, for the purpose of cutting off the equity of redemption, and the sale, in the manner in which it was conducted, was not one within the terms of the power. The conduct of Phelps was unfair, and the Stones were injured by his act.

As the bill is not to set aside a sale for irregularity, but to redeem, there is no *laches*, and hence the cases cited do not apply.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This is a bill to redeem from a sale made under a trust deed. By trust deed, dated June 17, 1875, Isaac Stone and his wife Julia A. Stone conveyed three lots in Chicago, with the improvements thereon, known as Nos. 122, 124 and 126 Quincy Street, to Erskine M. Phelps, as trustee, to secure a note for $12,000.00 of same date made by Isaac Stone, payable to I. V. Williamson three years after date, with interest at eight per cent per annum payable semiannually. Stone lived in Northampton, Massachusetts, Williamson in Philadelphia, Pennsylvania, and Phelps in Chicago. The note was given for money loaned by Williamson, through Phelps, to Stone. The sale was made by the trustee on December 23, 1878, for the nonpayment of the principal note and the last interest note, both of which fell due on June 17, 1878. The property was sold to Williamson for $9000.00, and a trustee's deed was executed in pursuance of the sale. This bill was filed on August 11, 1883, by Stone and wife against Williamson and Phelps. The Circuit Court allowed the redemption and decreed in favor of the complainants. This decree having been affirmed by the Appellate Court is brought before us by appeal from the latter Court.

Where a trust deed is made to secure the payment of a debt, the trustee named therein is the representative, not only of the owner of the indebtedness, but also of the maker of the trust deed. He is the agent of both the creditor and the debtor. His duty is to act fairly towards both, and not exclusively in the interest of either. The law requires the conduct of such a trustee to be absolutely impartial as between the two parties whom he represents. (*Ventres* v. *Cobb,* 105 Ill. 33; *Cassidy* v. *Cook,* 99 id. 385; *Meacham* v. *Steele,* 93 id. 135.) Hence, his relations with one of them ought not to be of such a character as to tempt him to neglect the interests of the other.

We do not think that Phelps, the trustee in the present case, was guilty of any intentional fraud in his conduct towards Stone. But at the time the trust deed was executed, and from that time to the date of the sale and thereafter, he was the agent of Williamson in making and collecting the loans and looking after the business of the latter in Chicago. As a consequence of the relation which he thus sustained, he so conducted the sale under the trust deed as to make it enure to the advantage of Williamson and to the disadvantage of Stone. We can not go into a lengthy examination of the testimony, which consists mainly of correspondence between Stone and Phelps, and between them both and Williamson, but will only glance at a few features of it.

Three days after the sale, towit: on December 26, 1878, Phelps thus wrote to Williamson: "On the 23d inst., I bid in the property and should have written you the next day, but did not, on account of two real estate brokers assuring me they had an offer for the property sufficient to pay us out in full. * * * We bid the property off for nine thousand dollars, and shall take judgment against Mr. Stone for the balance of about four thousand dollars. * * * My impression is, we had better get a quit-claim deed from Mr. Stone, and, if you desire, will have one sent for him to sign. I did not bid the whole amount of the property, as I thought by having four or five thousand (dollars) hanging over him he would be more willing to give us a deed of the property."

This language, literally interpreted, would convey the idea, that Phelps was not only auctioneer at the sale, but bidder as well. The testimony, however, shows that an attorney by the name of Francis W. Jones bid off the property for Williamson. Although Jones collected some rents and remitted them to Williamson, and perhaps transacted some other business for him, yet as matter of fact he was the attorney of Phelps. He never saw Williamson, and what he did for the latter he did at the request and under the direction of Phelps. Jones con-

sulted with Phelps before the sale as to the amount to be bid, and was present at the sale at the request of Phelps. Phelps says in his testimony that he exercised his own judgment as to the amount of the bid, and struck the property off at $9000.00, and that he has no recollection of receiving any instructions from Williamson as to the sum to be bid. It thus appears, that, although Jones made the bid, the trustee fixed the amount of it.

As is usual in such cases, there is conflict in the testimony as to the value of the property. Some of the witnesses say that it was only worth $9000.00 at the time of the sale, others place its value at that time at $22,000.00 and $25,000.00. Phelps says it was worth $24,000.00 in 1875 when the trust deed was made, and Magill, one of the real estate experts, states that there was no difference in values in the years 1875 and 1878. It appears from letters written by Phelps to Williamson and Stone early in December, that negotiations were then going on with certain brokers for a private sale of the property at $15,000.00. The letter of December 26th as above quoted shows that Phelps had been assured, up to the day after the sale under the trust deed, of an offer sufficient in amount to cover the total indebtedness, which was not less than $13,000.00.

But, whatever may have been the value of the property on December 23, the amount bid for it on that day was not determined with reference to the value, but with reference to the possibility of forcing a quit-claim deed from Stone. It was not proper for the trustee to direct the representative of Williamson what bid he should make. It is the duty of the trustee to offer the property at public auction in such a way as to make it bring the highest possible price, and to leave the parties to decide for themselves what they will offer for it. But even if it had been allowable for Phelps to advise Jones what to bid, it was his duty to base that advice upon his own deliberate judgment as to the value of the property. Instead

of this, he determined the amount of the bid by his opinion as to the amount of unpaid indebtedness, which it would require to force Stone to give a quit-claim deed. This is a matter of which Stone has a right to complain, because such conduct on the part of the trustee, who was his agent as well as the agent of Williamson, unquestionably prevented the property from bringing what it ought to have brought. Stone was injured and prejudiced by the fact that a large indebtedness was left hanging over him, which might have been cancelled, if Phelps had pursued a different course.

A court of equity will always examine with the closest scrutiny a sale that is made under the power contained in a trust deed, and where the rights of third persons have not intervened, as is the fact in the case at bar, redemption from such a sale, conditioned upon the full payment, to the holder of the indebtedness, of all that is due to him, will be allowed where there is evidence of any such unfairness on the part of the trustee, whether intentional or unintentional, as has resulted in injury to the debtor.

We do not think there is any ground for the charge of laches against the appellees, because the facts above set forth were not discovered until after the filing of the original bill in this cause. When they were discovered, the original bill, to which laches may have been a successful defense, was amended by setting them up.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE SHOPE, not having been present at the argument of the case, took no part in its consideration.