[No. 3600.  Decided July 5, 1900.]

W. A. JONES et ux., Appellants, v. S. F. STEELMAN et al.,
Respondents.

TRUSTS—ABUSE BY TRUSTEE—REMEDY OF CESTUI QUE TRUST.

Where members of a partnership deed partnership land to a
trustee for the purpose of selling same and applying the pro-
ceeds to the payment of partnership debts and dividing the sur-
plus, if any, between the partners, a conveyance by the trustee
to one of the partners, in consideration of the payment of that
partner's individual debt to the trustee and the assumption by
such partner of a firm debt, which does not amount to a satis-
faction thereof but still leaves the other partner liable thereon
to the creditor of the firm, is an abuse of the trust for which
equity will grant relief.

Appeal from Superior Court, Clarke County.—Hon.
ABRAHAM L. MILLER, Judge.  Reversed.

W. W. McCredie, for appellants.

W. H. Metcalf, for respondents.

The opinion of the court was delivered by

WHITE, J.—The appellants are husband and wife, and
were such at the times of the transactions herein men-
tioned.  S. F. and Hannah C. Steelman are husband and
wife, and were such at the times of the transactions herein
mentioned.  From October, 1897, to May 3, 1899, appel-
lants and the Steelmans were partners in the operation of
a flouring mill in Ridgefield, Washington.  The flouring
mill was situated upon a tract of land conveyed by H. A.
Lamb and others, of the date of October 15, 1897, to
W. A. Jones and S. F. Steelman, for the consideration
expressed in the deed of $1,250, and was conveyed sub-
ject to a mortgage for $928, in favor of J. M. Arthur &
Co.  The mill and land are the property in controversy

in this action.   The mortgage mentioned in this deed was, on the 13th day of April, 1899, assigned by J. M. Arthur & Co. to respondent Abrams.   One thousand dollars was borrowed by the partnership from one Bellows, for which W. A. Jones, S. F. Steelman, and D. K. Abrams gave their joint and several promissory note, Abrams signing such note as surety.   With this $1,000 the J. M. Arthur & Co. indebtedness was paid, but the mortgage was not canceled, it being assigned to respondent Abrams as his security for becoming surety on the Bellows note.   The reasonable value of the property in controversy is $2,500.   The note given to Bellows has not been paid.   The foregoing facts are not disputed.

The appellants claim that, on the 3d day of May, 1899, the appellants and respondents Steelman gave a deed of said property to respondent Abrams, pursuant to an agreement between appellants and all the respondents that said respondent Abrams should sell said property for what it was reasonably worth, pay the Bellows note and interest, and divide the balance of the money realized from the sale between the appellants and respondents Steelman; that the respondent Abrams, instead of discharging the trust imposed in him, secretly and unknown to appellants and in collusion with the respondent S. F. Steelman, conveyed said property to said Steelman, upon the condition that said Steelman pay Bellows' note and individual debts owing by said Steelman to Abrams.   The appellants ask that the deed from Abrams to Steelman be set aside, and that Abrams be required to carry out the trust imposed in him, or surrender the trust property to the court; that he be required to give a full account of his actions as trustee, and that, if he has wasted any of the trust property or placed it beyond the control of the court, appellants have judgment against him for what may be reasonable and

just; and that appellants may have such other and further relief as may seem equitable and just.

The respondents claim certain individual advancements by respondents Steelman to the partnership, amounting to about $100. The respondents claim, also, that in the month of May, 1899, the said appellants and respondents Steelman not being able to pay said mortgage indebtedness, and the respondent Abrams being liable for the amount thereof on the note given to Bellows, the said appellants and the said respondents Steelman executed and delivered to said respondent Abrams a deed of conveyance of said partnership property, *with the understanding and agreement that the said Abrams should, at his convenience, pay and discharge the Bellows note as a consideration for said deed,* and that said Abrams sold and conveyed said property to said S. F. Steelman, who agreed to pay the indebtedness represented by the Bellows note. The court below found:

"VI. That on or about the third day of May, 1899, the said partnership being unable to pay the said mortgage indebtedness, the same then being, with interest accrued, the sum of ten hundred and fifty ($1,050) dollars, the plaintiffs and the defendants S. F. Steelman and Hannah C. Steelman, his wife, for the purpose of paying, first, the said mortgage indebtedness, and second, such other indebtedness of said partnership as the proceeds of the sale of said partnership property, if sold by the said Abrams, might cover over and above the amount due and to become due on said mortgage, made, executed and delivered to said defendant D. K. Abrams, the certain deed of conveyance of said partnership property mentioned in plaintiff's complaint.

"VII. That thereafter the said defendant D. K. Abrams, being unable to sell said property so conveyed to him, for any sum in excess of said indebtedness thereon, bargained, sold and conveyed the same to the defendant

S. F. Steelman for the sum of ten hundred and fifty dollars, the amount due on said mortgage, and for the payment of said sum said grantee then and there assumed and agreed to pay the said indebtedness."

As a conclusion of law the court found "that the said deed of conveyance of the said defendant D. K. Abrams to the said defendant S. F. Steelman was *bona fide* and in good faith made pursuant to the power and title vested in the said D. K. Abrams by the conveyance to him of the said plaintiffs and the said defendants S. F. Steelman and Hannah C. Steelman, and should therefore be permitted to stand, subject to the payment by the said defendants S. F. Steelman and Hannah C. Steelman of the said mortgage indebtedness, with accrued and accruing interest thereon, and that the defendants recover judgment for their costs and disbursements herein against the plaintiffs."

The testimony in the case is somewhat conflicting, but tends to support the contention of the appellants. The court below found that the conveyance was made to Abrams for the purpose of paying: First, the mortgage indebtedness; and, second, such other indebtedness of the partnership as the proceeds of the sale might cover if sold by Abrams,—to this extent finding in favor of the contention of the appellants that a sale of the property by Abrams was contemplated, and repelling the claim of the respondents in their answer that the deed was made to Abrams with the understanding and agreement that he should, at his convenience, pay and discharge the Bellows note as the consideration for said deed. The agreement was made in the first instance between W. A. Jones and Abrams. Jones testifies that the property was given to Abrams to settle up the partnership business; that his agreement with Abrams was that Abrams was to take the property, put it on the market, either through himself or his agent, get as good a price as he could, pay off the indebtedness against

the firm, and divide whatever was left between Steelman and himself.    Abrams stated that the property ought to bring $2,400; that no special limit as to the price was fixed, but that it was to be put on the market by Abrams or his agent and sold for the best price that could be got for it.    A Mrs. Thomas testifies that she heard a conversation between Jones and Abrams relative to what should be done with the property; that it was to be put up and sold to the highest bidder, and the proceeds to be divided after the debts were paid.    The testimony of Abrams himself bears out the theory that the property was to be sold by him for the benefit of the partnership.    He says he had the privilege of selling it to Jones or Steelman, or any stranger, for the face of the mortgage, if he could not get any more; that he was to sell the property for as much as he could get for it, but he was to sell it even if he did not get more than the mortgage; that, if he sold it for more than the mortgage, the proceeds were to go to pay the debts; that he was to sell it for enough to pay off the mortgage; and that he was to sell it to the highest bidder.    The following· is from the testimony of Abrams on cross-examination:

"Q.    I understood you that you didn't talk with Jones about it until the day before you came up to have the deed made out, but prior to that you hadn't talked with Jones?

A.    No, sir; I don't think I did.

Q.    You were to take this property and sell it for as much as you could get for it, but you were to sell it, even if you didn't get more than the mortgage?

A.    Yes, sir.

Q.    If you sold it for more than the mortgage, what were you to do with it?

A.    It was to go to pay the debts.

Q.    After the debts were paid, what was to be done?

A.    Nothing said about that.

Q.    You were to sell for as much as you could get, but were to sell for enough to pay off the mortgage?

A.    Yes, sir.

Q.    And to sell to the highest bidder?

A.    Yes, sir.

Q.    That was the understanding?

A.    Yes, sir.

Q.    Under that understanding the deed was made to you?

A.    Yes, sir.

Q.    You canceled the mortgage?

A.    Yes, sir.

Q.    Did you cancel it the same day?

A.    I think so.

Q.    You think it was about the same day?

A.    Yes, sir.

Q.    When you sold it to Steelman you took a mortgage back for how much?

A.    One thousand dollars.

Q.    Is that on record?

A.    I think so.

Q.    When did you put it on record?

A.    Steelman put it on record.

Q.    Are you sure it is on record?

A.    I supposed it was.

Q.    You are not sure about that?

A.    No, sir.

Q.    You don't know about when it went on record?

A.    No, sir."

This testimony is consistent with the claim of appellants, and inconsistent with the defense set up in the answer of the respondents, that the conveyance was an absolute conveyance to Abrams in consideration that Abrams would assume and pay the Bellows note. Abrams further testifies that he tried to find a purchaser for the property; that he talked with two or three about it, and that two or three letters from proposed purchasers were

written to him; that Jones and Steelman were trying to find buyers, and he supposes these letters came through their activity; that Jones had told him of a buyer. All this tends to show that Abrams held the property in trust to sell for the benefit of the partnership. Steelman testifies that the deed to Abrams was for the face of the mortgage, and that, "He was to dispose of it any way he saw proper. He was to sell the property to whoever he could, and satisfy Mr. Bellows and the face of the mortgage. He was on the note of Bellows, and he was responsible for the money." It will be seen from this testimony that at least the note of Bellows was to be paid by a sale of the property. The pleadings of the appellants and respondents show that the Bellows note has not yet been paid. As between Bellows and Jones, Jones is still liable on the Bellows note, for Bellows was not a party to any arrangements made between Steelman and Abrams as to the payment of the Bellows note. This itself is sufficient ground for setting aside the deed from Abrams to Steelman; for the debt to Bellows has not been discharged, and Jones is still liable therefor. Steelman says Abrams was to sell the property and satisfy the Bellows note. This has not been done. The court below recognized this in its conclusions of law, and in the decree entered thereon; for in its conclusions of law the court says that the conveyance from Abrams to Steelman should stand, subject to the payment by Steelman of the mortgage indebtedness with accrued and accruing interest thereon, and the decree adjudges that the conveyance should stand, subject to the payment of the Bellows note. The court cannot make a contract for the parties. Jones never agreed to convey this property to Steelman in consideration that Steelman would pay the Bellows note. The liability of Jones to Bellows on the Bellows note is not discharged by this decree, or by

any arrangement made between Steelman and Abrams, so far as Bellows' right to look to Jones alone for the payment of the note, if he so elects, is concerned. There are other circumstances in this case tending to show collusion, as alleged in the appellants' complaint, between Abrams and Steelman. Here is property worth $2,500. Nine days after it was conveyed to the trustee, it is sold to one of the partners conveying it, thereby divesting the legal title of the other partners, for $1,050, just the amount due on the Bellows note and Arthur & Co. mortgage, for which a mortgage was given by Steelman to Abrams, left in the possession of Steelman, and recorded by him on June 1, 1899. Not one dollar passed. Other indebtedness of the partnership, amounting to something like $300, remains unpaid. By this transaction one partner takes all the firm assets worth $2,500, for $1,050, making by the transaction $1,450, yet leaving the despoiled partner still liable to the creditors of the firm for the entire indebtedness of the firm, amounting to about $1,350. The evidence shows that Abrams and Steelman, without the knowledge of Jones, a few days before the transfer was made to Abrams, went to a lawyer and consulted him with reference to having the Arthur & Co. mortgage foreclosed; that Abrams had confidence in Steelman; that Steelman was anxious to get the property if he could get Jones out.

" The principle is well settled that trustees are bound to exercise care and prudence in the execution of their trust, in the same degree that men of common prudence ordinarily exercise in their own affairs. . . . This rule concerning the extent and limits of the trustee's duty to use care, diligence, and prudence applies to all his transactions in connection with the trust, and all his dealings with the trust property, by which the interests of the beneficiary can be affected." 2 Pomeroy, Equity Jurisprudence, 1070.

The sale will not be set aside for mere inadequacy of price, if due diligence was used by the donee of the power to sell under every possible advantage.

"Where there are suspicious circumstances connected with the fact of inadequacy of price, as where the parties stand in a fiduciary relation to each other, . . . inadequacy of consideration will become very pertinent, and oftentimes conclusive evidence that fraud and undue influence have been used to bring about a bargain advantageous to the one side and ruinous to the other." Perry, Trusts (4th ed.), § 187.

Abrams was the agent of Jones, Steelman, and the creditors of the partnership. In a trust of this character the trustee is bound to act with entire fairness and impartiality between all the parties he represents. It has been held that trustees in deeds of trust with power of sale to secure debts are considered as the agents of both parties, and they must act with the strictest impartiality and integrity; and where it is shown that they have abused their trust, or have combined with one party to the detriment of the other, or where it appears that a substantial injury has resulted from their acts in failing or neglecting a wise and sound discretion, equity will grant relief. *Goode v. Comfort,* 39 Mo. 313; *Sherwood v. Saxton,* 63 Mo. 78; *Williamson v. Stone,* 128 Ill. 129 (22 N. E. 1005).

At the time of the conveyance from Abrams to Steelman, it was agreed between Abrams and Steelman that Steelman would secure Abrams by a mortgage on other property for three hundred dollars, which Steelman individually owed Abrams. The evidence in this case fails to show any honest effort on the part of Abrams to sell the property to outsiders. Steelman, in his testimony, in substance says he intended to buy back the property before he signed the deed to Abrams; that, when Jones proposed to deed the property to Abrams, it "kind of

stunned" him to deed away his property and have nothing to show for it; that he then talked to Abrams without Jones' knowledge and, after that, turned the property over to Abrams.

As we view the evidence in this case and the circumstances surrounding the transactions, we are convinced that, under the rules governing a court of equity, the deed from Abrams to Steelman should be set aside and held for naught, and it is so adjudged and decreed.

It is further adjudged and decreed that the respondent Abrams, under and pursuant to the understanding and agreement set out in the complaint, is a trustee of appellants and respondents Steelman, for the purpose of selling said property for what it is reasonably worth, and applying the proceeds: First, to the payment of the Bellows note; and next, to the payment of the other debts of said partnership; and, if any balance remains, the same to be divided between the appellants and respondents Steelman. This cause is remanded to the court below, with instructions to enter a decree in accordance with this opinion, and also to direct said trustee to sell said property, on notice usually given of sale of real property on execution, at either public or private sale, as the court below may decree; said sale to be subject to confirmation by the court, and the proceeds to be distributed as in this opinion indicated. The court below is further directed to ascertain the partnership indebtedness and the advances, if any, made by the respondents Steelman as claimed in their answer; and, if any balance shall remain after paying said Bellows note, the partnership debts, and the said advances, and the costs of this action hereafter accruing in the court below, the same shall be divided between the appellants and respondents Steelman.

And it is further ordered and adjudged that the judgment and decree entered herein in the court below on December 26, 1899, be reversed and set aside.

And it is further ordered and adjudged that all the costs in this action that have accrued to the present time in the court below be paid by the respondents; and, further, that appellants have and recover their costs in this court.

DUNBAR, C. J., and REAVIS, ANDERS and FULLERTON, JJ., concur.