Central Trust Company of Illinois, Defendant in Error, v. Louis S. Owsley, Executor, Plaintiff in Error. Impleaded with Inter Ocean Newspaper Company and George W. Hinman, Defendants.

Louis S. Owsley, Executor, Plaintiff in Error, v. Central Trust Company of Illinois, Defendant in Error.

## Gen. No. 19,527.

1. STIPULATIONS, § 20*—*when waives objection to jurisdiction.* A stipulation between the parties *held* to preclude all questions as to the jurisdiction of a court of equity to settle the controversy, and to waive any possible objection which could have been made originally that there was an adequate remedy at law.

2. ABATEMENT AND REVIVAL, § 41*—*what not a similar action pending.* A petition filed in the Probate Court asking for instructions as to whether a custodian should comply with a demand of the executor to tender back money paid on disputed bond coupons held by it and whether the custodian should demand a return of the coupons, *held* not a similar proceeding pending which would constitute a bar to suit filed in equity for instructions with respect to declaring the principal of the bonds due.

3. ABATEMENT AND REVIVAL, § 34*—*method of raising objection of another action pending.* Objection to the jurisdiction of the court on the ground there is a prior action pending can only be made by a plea in abatement.

4. MORTGAGES, § 127*—*duty of trustee as agent of parties.* A trustee in a trust deed given to secure the payment of money is the agent of both parties thereto, and is bound to act fairly and justly towards the debtor as well as towards the creditor, and if the instructions or demands of one party require him to do an illegal or immoral act, he may violate such instructions with impunity.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

5. MORTGAGES, § 291*—*when failure of trustee to declare princi-pal of bonds due on default in payment of interest not violation of duty.* Where a trust company was made trustee in a trust deed to secure the payment of certain bonds, with a clause in the deed requiring the company upon demand of ✸ majority of the owners of the bonds to declare the principal of the bonds due on default in the payment of interest coupons, and the company after a de-mand upon it to declare the bonds due received payment of the interest on the overdue coupons and surrendered the coupons to the mortgagor, *held* that the payment of the interest to the com-pany was a valid payment and that the company did not violate its duty in failing to declare the principal of the bonds to be due, it appearing that the bonds and coupons were legally in the pos-session of the company with authority to demand the interest, which authority had never been withdrawn, and that the Probate Court had assumed and exercised jurisdiction over a majority of the bonds and had directed a sale thereof on the application of the executor of the owner thereof, and that the order of such court had fixed a status of the bonds which the executor could not change by demanding that the company declare the maturity thereof.

Error to the Circuit Court of Cook county; the Hon. JOHN GIB-BONS, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1913. Affirmed. Opinion filed October 6, 1914.

**Statement by the Court.** This writ of error brings before the court for review a final decree entered. Feb-ruary 13, 1913, by the Circuit Court of Cook county.

A bill of complaint was filed by the Central Trust Company of Illinois, as trustee under a trust deed ex-ecuted by the Inter Ocean Newspaper Company, for instructions as to whether it should declare the prin-cipal of the bonds due on a written demand from L. S. Owsley, executor of the estate of Charles T. Yerkes, owner of the majority of the bonds, after the necessary default on three sets of coupons, called the "disputed coupons," alleging that as such trustee it is in doubt as to the right of the executor to make such demand by reason of (a) dealings and contracts between the executor and George W. Hinman, president of the Newspaper Company, as to a proposed sale of said

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

bonds and coupons to him, and because of certain orders of the Probate Court; and (b) as to whether the Trust Company, which had possession of said bonds and coupons as custodian of the Yerkes estate by appointment from the Probate Court, rightfully received, subsequent to such written demand, the amount of said overdue coupons and surrendered them to the Newspaper Company.

The bill was answered by the executor, Owsley, and a cross-bill was filed by the executor against the Trust Company to recover damages resulting from the refusal of the Trust Company to declare the principal of the bonds due and wrongfully surrendering the disputed coupons.

Substantially all of the material facts of the case are undisputed and are set forth in the pleadings, in substance, as follows:

The Trust Company was appointed custodian of the securities coming into the possession of the executor under an order of March 15, 1906, which provided that "no securities so deposited with the Trust Company should be withdrawn except by an order of the court and that no cash so deposited should be withdrawn except by an order of the court, or upon vouchers approved by the Trust Company.

The Inter Ocean Company, on January 1, 1907, executed a trust deed or mortgage to the Trust Company to secure an issue of $600,000 bonds, of which $400,000 were the property of the executor, a copy of the trust deed or mortgage being attached to the bill; the $400,-000 bonds were deposited with the Trust Company as custodian under an order of the Probate Court of March 15, 1906; the coupons on these bonds due January 1, 1910, July 1, 1910, and January 1, 1911, were not paid when they became due; and at the request of the executor, on March 27, 1911, the Trust Company made due demand for the payment of the disputed coupons, and payment was refused.

On April 1, 1911, an agreement was made between George W. Hinman, the executor and the Trust Company, as escrow agents, with respect to a proposed sale of the $400,000 bonds to Hinman. The agreement recited that Hinman had made an offer to the executor, dated March 14, 1911, to purchase the $400,000 bonds with all unpaid coupons for $200,000, $175,000 payable in cash within sixty days after an order had been entered by the Probate Court authorizing the executor to accept the bid, and $25,000 in a note for one year, properly secured upon certain conditions made in the offer. The agreement provided that Hinman should deposit with the Trust Company $20,000 as a guaranty that he would carry out the terms of the offer.

June 8, 1911, the executor filed in the Probate Court a petition praying that he be authorized to sell the bonds to Hinman upon the terms of the offer; and on November 25, 1911, the Probate Court entered an order that bids should be invited for the purchase of the bonds to be received on or before December 27, 1911, and that if no better offer was received, the Hinman offer should be accepted. Subsequently, by agreement, the time was extended to January 18, 1912.

On November 25, 1911, after the order of the Probate Court was entered on that date, the executor presented a written demand on the trustee to declare the principal of bonds due in accordance with the provisions of the trust deed, and especially article V, which provided that in case there was a six months' default in the payment of the coupons after due demand "that the trustee * * * may and if thereunto requested in writing, by a holder of a majority in amount of the said bonds outstanding, shall by written notice to the Company declare the principal of all the bonds hereby secured then outstanding to be and the same shall thereupon become immediately due and payable." The Trust Company thereupon advised the attorney of the executor, who presented the demand,

that on account of the proposed absence of its vice-president, the matter could not be given attention until November 28, 1911, and that the attorney of the executor assented. On November 28, 1911, and before the trustee had secured the advice of its counsel as to its duty on the demand of the executor, the Inter Ocean Company paid in full the disputed coupons, the Trust Company delivered up the disputed coupons to the Inter Ocean Company and notified the executor. The executor repudiated the transaction, and claimed that the Trust Company held the coupons solely as custodian and had received the money and parted with the coupons without authority.

On December 4, 1911, the executor having filed in the Probate Court his petition praying that the Trust Company be proceeded against as in contempt of court in violating the custodian's order of March 15, 1906, by reason of its surrender of the disputed coupons, the trustee filed in the Probate Court its petition setting forth the facts and asking the direction of the Probate Court as to whether it should tender back the money so received and demand the return of the disputed coupons. At the hearing, December 29, 1911, the Probate Court declined to enter any order on either petition and continued the matter to January 9, 1912; that the presiding judge then indicated that the Trust Company was not authorized to receive the money and surrender the disputed coupons, and entered an order requiring the Trust Company to deliver the disputed coupons to the executor on or before January 8, 1912, but made no adjudication as to whether the Trust Company was authorized to receive payment and surrender the disputed coupons.

January 2, 1912, the trustee tendered back the money to the Inter Ocean Company and demanded the return of the disputed coupons.

After the executor had served the demand upon the trustee to have the principal of the bonds declared

due, the trustee informed the Inter Ocean Company of the demand and that said Company then claimed that because of the dealings between the executor and George W. Hinman, who was the president of the Inter Ocean Company, neither the executor nor the trustee had the right to declare the principal of the bonds due and that said Company would be seriously damaged by such acts.

After the entry of the custodian's order of March 15, 1906, the Trust Company had been in the habit, from time to time, of collecting interest coupons and similar securities without an order of court and with the acquiescence of the executor; and the request of the executor to present the disputed coupons for payment March 27, 1911, was made without any order of court, or any claim that an order was necessary, and the authority then given by the executor had never been withdrawn unless the demand of November 25, 1911, amounted to such revocation or withdrawal.

The executor insists the bill avers that it is the duty of the trustee to declare the principal of the bonds due, and proposes, in case the trustee declares the principal of the bonds due, to make public advertisement of the fact to induce persons to bid in the Probate Court for the purchase of said bonds on the theory that the purchaser would thereby secure the right of either having the bonds paid in full or procure the sale of the properties and franchises of the Newspaper Company under the trust deed of January 1, 1907, and thereby he would realize a sum much greater than the Hinman offer, and that the executor threatens to hold the Trust Company liable in heavy damages; that the Inter Ocean Company and Hinman claim that by reason of the negotiations between the executor and Hinman, and the proceedings in the Probate Court, neither the executor nor the Trust Company had the right to declare the principal of the bonds due; and if the Trust Company declared the principal of the

bonds due, the Inter Ocean Company would hold the trustee responsible for heavy damages; that the executor claimed that the Trust Company was without authority to receive payment of the disputed coupons and surrender them; that the Inter Ocean Company claimed that the Trust Company had such authority; that the executor had held out the Trust Company as possessing such a power, and that the payment of the disputed coupons cured the default; that under the mortgage the trustee was entitled to a bond of indemnity, and that the executor had refused to furnish such bond.

The Trust Company, as trustee under the mortgage of January 1, 1907, was in doubt as to its duties and liabilities growing out of the matters set forth in its bill, and, particularly, whether even if the Inter Ocean Company had not tendered payment of the disputed coupons, in view of the proceedings in the Probate Court, and the negotiations between the executor and Hinman and the Inter Ocean Company, the trustee was legally entitled to declare the principal of the bonds due; as to whether the disputed coupons had in fact been paid; whether such payment operated to relieve the default; as to whether under all the circumstances it was the duty of the trustee to declare the principal of the bonds due; that in view of the claims of the respective parties, the Trust Company prayed "that this court may determine whether or not it, as trustee under said mortgage or deed of trust, dated January 1, 1907, is legally entitled to and should declare the principal of the said bonds to be due and payable, and may by its decree direct, advise and aid the complainant as such trustee in that respect, and for other and further relief."

The answer of the executor, Owsley, to the bill of complaint admits the material allegations of the bill of complaint and sets up the executor's rights as he contended them to be, and avers that he filed in the Pro-

bate Court, on December 4, 1911, his petition to have the Trust Company adjudged guilty of contempt for parting with disputed coupons, and on January 27, 1912, the court found the Trust Company guilty of contempt of court and fined it in the sum of $200; that he had repudiated the transaction of the Trust Company in receiving the money and parting with the disputed coupons, and insisted that the trustee should perform its duty and declare the principal of the bonds due notwithstanding the wrongful surrender of the disputed coupons. The answer alleges that if the trustee had performed its duty, purchasers would have bid substantially par for bonds, and that by reason of the wrongful failure of the trustee to perform its duty, the Hinman offer was the best price procurable, and alleges that the executor had suffered large damages and had filed his cross-bill of complaint to cover them.

The executor filed a supplemental answer, stating that without prejudice to its rights set up in his answer, and under the cross-bill of complaint, on March 7, 1912, in accordance with the order of the Probate Court of January 19, 1912, the executor had sold to George W. Hinman all of the $400,000 Inter Ocean bonds with coupons maturing on and after July 1, 1911, and thereafter had no further interest therein, but retained his right and claim to compensation from the Trust Company for damages and to relief and remedy against it for its wrongful act as set forth in its answer and cross-bill, and denies that the Trust Company is entitled to any relief under its bill of complaint.

The joint and several answer of the Inter Ocean Company and George W. Hinman sets up the general facts as they appear in the bill and answer of the executor and sets out at length the correspondence, the orders of the court referred to, and that on January 29, 1912, the executor made a written tender to Hinman of the $400,000 Inter Ocean bonds with the July

1, 1911, and succeeding coupons, and demanded payment of the sum of $142,883.58, being the sum of $175,000 mentioned in the contract of April 1st, and the order of the Probate Court, less $32,116.42 paid for the disputed coupons, and that Hinman also deliver his note for $25,000 that subsequently the entire transaction was closed by Hinman paying $142,883.58 and delivery of his promissory note for $25,000, and otherwise carrying out the terms of his offer, and by the executor delivering the $400,000 Inter Ocean bonds with the coupons maturing on and after July 1, 1911, and otherwise complying with the terms of said offer; that the coupons which have since matured have been surrendered to the Inter Ocean Company and cancelled; that the Trust Company has no right to declare the principal of the bonds due; that there are no matured coupons upon or pertaining to said bonds that have not been fully paid and surrendered to the Newspaper Company; that the final order of the Probate Court of January 19, 1912, confirming the *nisi* order of November 25, 1911, is conclusive upon the executor of the estate of Charles T. Yerkes, the Probate Court and all others, and that the executor is now precluded by such order and his acting thereon from raising the question of the payment of the disputed coupons.

The cross-bill filed by the executor against the Central Trust Company sets out substantially the same facts as are set out by the executor in his answer to the original bill, and that it was to the best interests of the Yerkes estate that the demand upon the trustee to declare the principal of the bonds due should not be made until after the court had taken action upon the petition of the executor to have the principal of the bonds declared due in order to secure the best offer for said bonds; that the refusal of the trustee to declare the principal of the bonds due and the delivery of the disputed coupons by the Trust Company cast a cloud upon the title of the executor and prevented the

executor from advertising that the principal of the bonds had been declared due so that prospective bidders might be informed that they could secure the rights, property and franchises of the Inter Ocean company and the right to publish the "Inter Ocean" through foreclosure proceedings; that had the trustee performed its duty the market value of the bonds would have been worth much more than the amount of the Hinman bid, to wit: substantially the sum of $400,000, by reason of the fact that the puchasers would have had the right to either have had the principal and interest of the bonds paid in full, or to have the trustee enter and take possession of the property of the Inter Ocean Company and control the publication of the "Inter Ocean," or by foreclosure under the terms of the mortgage to have acquired such property and the right to publish the newspaper; that the failure to receive any bid on said bonds up to and inclusive of January 18, 1912, other than the Hinman offer, was caused by the wrongful acts of the trustee, and especially its failure to declare the principal of the bonds due,—in consequence of which wrongful acts the property in the bonds, which was reasonably worth $400,000, was sold for $200,000, and has refused to reimburse the executor, and prays for a decree that the Trust Company committed a breach of duty as trustee and damage to the executor, and for an accounting the payment by the Trust Company of the amount so found to be due the executor.

The answer of the Central Trust Company to the cross-bill sets out the facts substantially as set out in the original bill of complaint; admits the receipt of the demand to declare the principal of the bonds due and its failure to make such declaration, and states that it received from the Inter Ocean Company the amount of the disputed coupons and surrendered the coupons, and alleges that promptly upon payment of said coupons one George M. Maher, who was the rep-

resentative of said cross-complainant in all matters relating to said estate, was informed of the payment and the money was tendered to him and that Maher stated that it would be necessary for him to telegraph for instructions. The answer also sets out that under the trust deed it is expressly provided that the defendant should not be answerable or accountable under any circumstances except for bad faith, or gross or wilful negligence, and avers that it has not been guilty of bad faith and has not been guilty of gross or wilful negligence, and denies that the cross-complainant is entitled to relief as prayed for.

Replications were duly filed to the answers, and on January 19, 1912, a stipulation or agreement was entered into between the Central Trust Company, the Inter Ocean Company, Owsley as executor, and Hinman, as to the bill and cross-bill and trial thereon of the Central Trust Company. The agreement recites the receipt by the Central Trust Company of the sum of $32,116.42 in payment for the disputed coupons; that the executor contends that the Central Trust Company of Illinois was not authorized to receive the money in payment of the coupons and was not authorized to surrender the same, and that the receipt of the money and the surrender of the coupons were, and each of them was, unlawful and improper; and, on the other hand, it has been contended by the Central Trust Company, and by the Inter Ocean Company and each of them that the Central Trust Company was authorized to accept said money in payment of said coupons and to surrender the same and that the acceptance was proper.

The agreement further recites that the executor contends that on November 25, 1911, and thereafter it was the duty of the Central Trust Company, as trustee, to declare the principal of the bonds due, and that it is contended by George W. Hinman and the Inter Ocean Company that it was not the duty of the Central

Trust Company to declare the principal of the bonds due, and that since the filing of the bill of complaint on January 19, 1912, the Inter Ocean bonds in controversy, together with the coupons due July 1, 1911, and subsequent thereto, were sold to George W. Hinman in accordance with the order entered by the Probate Court on November 25, 1911, and an order confirming the same entered on January 19, 1912, and that the $32,116.42 theretofore paid to the Central Trust Company of Illinois has been agreed to be turned over to the defendant executor in accordance with the agreement between the parties, which is attached.

To avoid circuity of action it is agreed that the executor shall answer the bill of complaint and file his cross-bill to have the damages assessed, and that the Central Trust Company shall answer the cross-bill, and the issues raised by said original bill and by said cross-bill, and the answers thereto shall be heard and determined together by this court in the cause, notwithstanding the sale of the bonds to Hinman and the agreement, Exhibit "A" annexed, and the payment made in accordance with said agreement; and, independently of whether or not the court in this cause shall hereafter instruct the said Central Trust Company of Illinois to declare or not declare the principal of the bonds due, as to which the court shall take such action as it may be advised, the court shall, nevertheless, determine whether or not it was, on November 25, 1911, or at any time subsequent thereto, and prior to the date of sale of said bonds to said Hinman, the duty of said Central Trust Company of Illinois to declare the principal of said bonds due, and shall also determine fully the issues raised by said cross-bill and the answer thereto. The agreement further recites that the parties understanding that the appeal from the Probate Court on the contempt proceeding may possibly be determined before the hearing of this

cause, this shall be without prejudice to the executor to claim that such proceedings are *res adjudicata* and without prejudice to the other parties to claim that it is not *res adjudicata* as to any matter or thing involved in the above cause, it being admitted that neither said Hinman nor said Inter Ocean Newspaper Company was or is a party to such contempt proceedings in the Probate Court, and nothing in this stipulation contained shall be construed as a waiver by any party of his or its right to have the decree reviewed upon appeal or writ of error.

MILLER, STARR, PACKARD & PECKHAM, for plaintiff in error; W. ORISON UNDERWOOD and MERRITT STARR, of counsel.

PAM & HURD and JOHN BARTON PAYNE, for defendant in error.

MR. JUSTICE SMITH delivered the opinion of the court.

The final decree of February 13, 1913, finds upon the bill and cross-bill that by reason of the order of November 25, 1911, and the contract of April 1, 1911, and the facts shown in the record, it was not the duty of the trustee to declare the principal of the bonds due; that the demand of the executor interfered with the order of November 25, 1911, and changed the status of the parties; that the executor appointed and treated the Trust Company as his agent to demand and receive payment for the disputed coupons; that the Trust Company had the right to receive payment therefor and surrender the disputed coupons, and that the Trust Company was not bound to comply with the demand of the executor.

Fifty errors are relied upon for a reversal of the decree. Plaintiff in error has presented a brief and argument under sixteen heads with numerous subdi-

visions in support of the errors assigned. We shall not undertake to pass upon the numerous points and subdivisions specifically, although we have considered them. In the view we take of the case, such a discussion would be unnecessary, for it would involve a discussion of many points which we deem immaterial.

The bill presented a clear case of a trustee confronted by doubt as to its duty in the premises and threatened with damage suits by both parties if it failed to comply with their respective demands. But, whatever equity the bill may have presented as originally filed, all questions as to the jurisdiction of the court in the premises were foreclosed by a stipulation in the case entered into between the parties. That stipulation contained a recital to the following effect: "Whereas, in order to avoid circuity of action and multiplicity of suits, it is desired by all the parties that the matters in controversy between the parties hereto shall be determined in this proceeding." It was then agreed that the executor should answer the bill and that he should file a cross-bill, setting up his alleged claim for damages, and that "the issues raised by said original bill and by said cross-bill and the answers thereto, shall be heard and determined by this court in the above entitled cause, notwithstanding the sale of said bonds to Hinman and the agreement, Exhibit 'A,' hereto annexed, and the payment made in accordance with said agreement, and, independently of whether or not the court in this cause shall thereafter instruct the Central Trust Company of Illinois to declare or not declare the principal of the bonds due, as to which the court shall take such action as it may be advised (the defendant executor claiming that having sold said bonds, he is no longer interested in the question as to whether or not the principal of said bonds shall thereafter be declared due), said court shall, nevertheless, determine whether or not it was, on November 25, 1911, or at any time subsequent there-

to and prior to the date of the sale of said bonds to said Hinman, the duty of said Central Trust Company of Illinois to declare the principal of said bonds due, and shall also determine fully the issues raised by said cross-bill and the answer thereto.'' There is a further provision in paragraph five that nothing in the stipulation shall preclude any defenses, with a recital to the effect that it is not intended to cut off defenses, ''but simply to provide for the adjudication of such rights, claims, equities and defenses in this proceeding.'' We think it clear that under such stipulation the court should, in this proceeding, take the very course which the parties had agreed should be taken, namely, determine whether it was the duty of the Trust Company to declare the principal of the bonds due, the whole controversy revolving around that central fact. The stipulation was a clear and distinct waiver of any possible objection which could have been made originally, that there was an adequate remedy at law, and it is well settled that such a defense may be waived.

The contention that a similar proceeding was pending in the Probate Court is equally untenable. The petition which was filed in the Probate Court asked the instructions of that court as to whether the custodian should comply with the demand which the executor made upon it to tender back the money paid on the disputed coupons and demand a return of such coupons, and for such other instructions, if any, as the court might deem appropriate. The petition did not ask instructions of the Probate Court with respect to declaring the principal of the bonds due, but, if it had, the objection of a prior proceeding pending could only have been made by a plea in abatement in the Circuit Court. Not only was this plea not made, but the point was waived by the above stipulation.

We do not think it necessary to enter into a discussion of the construction of the clause in the mort-

gage with respect to declaring the principal of the bonds due. It may be conceded, for the purposes of this case, that under the clause in question in the mortgage, if default were made in the payment of interest and continued for the period specified therein, and this situation was not affected by any other circumstances, such as the agreements of the parties and the submission of the offer to the Probate Court, it would have been the duty of the Trust Company to have declared the principal of the bonds due. The trustee's duty here, however, was controlled by other circumstances and agreements subsequently entered into.

The executor contends that it was the duty of the trustee to declare the principal of the bonds due immediately upon the receipt of the demand from the executor on November 25, 1911, and the trustee had no discretion in the matter.

The argument in support of this contention is based mainly upon the fifth clause of the mortgage, which provides that the trustee, in case of six months' default, "may, and if thereunto requested in writing by the holders of a majority in amount of the said bonds then outstanding, shall, by written notice to the Trust Company, declare the principal of all the bonds hereby secured then outstanding to be, and the same shall thereupon become, immediately due and payable."

This argument, however, ignores many undisputed facts in the record which, in our opinion, justified the Trust Company in taking time to consider its duties, not only in view of the provisions of the mortgage, but of the situation of the parties. The Hinman offer of March 14th, the contract of April 1st, and the deposit of $20,000 thereunder by Hinman, the petition filed in the Probate Court on June 8th, and the order of the court thereon of November 25, 1911, fixed a status of the bonds and coupons not provided for in the mortgage. The Probate Court having assumed and exercised jurisdiction over the subject-matter and directed

a sale of the bonds and coupons as they stood, on the application of Owsley, the executor, there was no power or equitable right in the executor to change the status so fixed by demanding that the trustee declare the maturity of the bonds. If the Trust Company had complied with the demand of the executor and declared the bonds due, it would have created an entirely different status of affairs from that established by the Probate Court by its order *nisi* of November 25th. Hinman would have had the right to withdraw his offer and take up his deposit of $20,000, and the Probate Court would have been compelled to recognize the changed situation and allow the offer and the deposit to be withdrawn. At the time the demand was made upon the trustee, it was acting under the order of the Probate Court entered only a few minutes before, as well as under the prior order by which the bonds and coupons were placed in its custody, and the trustee had no right to change the status of the parties and the condition of the bonds without first submitting the matter to the court. The principles of common honesty and fair dealing with the court and the parties in interest required this. That the executor might have sold the bonds without applying to the Probate Court is immaterial. The executor did apply for an order of sale, and it was entered. After the court, upon the application of the executor, had taken cognizance of the subject-matter of the sale of the bonds, the executor had no right to step out of court and change the subject-matter of the sale without submitting the proposed change to the court. *Quidnick Co. v. Chafee,* 13 R. I. 367; *Knott v. People,* 83 Ill. 532; *Ex Parte Kellogg* (Cal.) 30 Pac. 1030; *Merrimack River Sav. Bank v. City of Clay Center,* 219 U. S. 527. We think the contention that it was the duty of the Trust Company to declare the bonds due on the demand of the executor made upon it a few minutes after the entry of the order of November 25, 1911, is untenable, when

considered from the point of view of the rights and obligations of the parties arising out of the agreement of April 1, 1911, and the subsequent proceedings in the Probate Court.

A consideration of the situation which the trustee occupied under the mortgage, and the duties which it owed to the maker of the mortgage and the holder of the bonds secured thereby, in connection with the subsequent relations created by the parties above adverted to, leads us to the same conclusion. A trustee in a trust deed given to secure the payment of money is the agent of both parties thereto, and is bound to act fairly and justly towards the debtor as well as towards the creditor. If the instructions or demands of one party require him to do an illegal or immoral act, he may violate such instructions with impunity. Story on Agency, sec. 195; *Ventres v. Cobb,* 105 Ill. 33; *Williamson v. Stone,* 128 Ill. 129. Furthermore, the written instruments and the evidence in the case establish beyond any reasonable doubt that the *status quo* was to be preserved by the parties until the Hinman offer was submitted to and passed upon by the Probate Court. Hinman offered to buy the bonds; the executor agreed to submit the offer to the Probate Court, and if the Probate Court approved the sale, Hinman should have the bonds, unless a better offer was made, and that the bonds in character and condition should remain unchanged until that matter was finally passed upon by the Probate Court; and to that end no attempt should be made to collect interest or rent or to declare the principal of the bonds due. This was the spirit of the agreements and actions of the parties up to the time the demand was made by the executor. The demand was in violation of the agreements, and was an act of bad faith on the part of the executor. On the other hand, when the demand was made to declare the bonds due, Dawes and Abbott of

the Trust Company took the matter under advisement until the following Tuesday. Hinman and the Inter Ocean Company paid the coupons. We think that there is no real foundation in the evidence, considering the relations of the parties, for reflection upon the conduct of Dawes and Abbott in taking the matter of the demand under advisement, and the conduct and action of the Trust Company is not justly subject to censure or judicial criticism.

It is urged on behalf of plaintiff in error that the receipt by the Trust Company of $32,116.42 and the surrender of the disputed coupons was not a payment thereof and did not relieve the trustee of its duty under the mortgage to declare the principal of the bonds due.

We cannot assent to this proposition. The question as to the authority of the Central Trust Company to deliver the diputed coupons does not affect this question. If the payment was a good payment, it relieved the default, whether the coupons were delivered or not. *Dwen* v. *Blake,* 44 Ill. 135. The coupons were due and the Inter Ocean Company had a right to pay them when the payment was made. The executor was out of the State when the payment was made. The bonds and coupons in question were legally and actually in the possession of the Trust Company, placed there by Owsley, as executor, under the order of the Probate Court. If the executor had the right to collect the coupons, such right must necessarily be exercised through the Trust Company which held the physical possession of them, for the debtor, Inter Ocean Publishing Company, had the corresponding right to the possession of the coupons when it paid them. If then the executor had the right to demand or request the Trust Company to demand payment of the coupons for any legitimate purpose and exercised that right, such request and demand carried with it the authority

from the executor to deliver the coupons if the debtor responded to the demand of the Trust Company and made payment before a forfeiture was declared for nonpayment. This demand and authority was never withdrawn. Hence, the executor cannot complain if the Trust Company received the money and delivered the coupons when they were paid by the Inter Ocean Publishing Company. The essence of the complaint of the executor, therefore, cannot be the receipt of the money or the delivery of the coupons when they were paid, but it is that the Trust Company failed to declare the bonds due for default in the prompt payment of the coupons after the demand for payment was made. Furthermore, the evidence shows that it had been the practice of Owsley, as executor, to collect such obligations as notes and maturing coupons through the Central Trust Company as his agent; and, as far as the Inter Ocean Company was concerned, the facts were that on the only occasion when formal demand was made for the payment of the coupons, such coupons were presented by the Central Trust Company, and that on the only occasion when the Inter Ocean Company was notified that a demand would be made, in June, 1909, the request was that the coupons be presented by the Central Trust Company. From all the facts shown in the evidence, our conclusion is that the payment of the coupons to the Trust Company was a valid and legal payment. *Southworth* v. *Smith,* 7 Cush. (Mass.) 391; *Hale v. Patton,* 60 N. Y. 233; *Ebert v. Arends,* 190 Ill. 221; *Zempel* v. *Hughes,* 235 Ill. 424.

If the payment of the money to the Central Trust Company, under the facts shown by the evidence, was not a legal payment of the coupons, it was a sufficient tender in equity to relieve against the forfeiture under the authorities cited above.

On January 18, 1912, no bids having been received for the bonds better than the Hinman offer, the Probate Court so found and ordered the bonds sold to

Hinman, the bonds to be delivered without the disputed coupons, and the price to be reduced by the amount which had been previously paid to the Central Trust Company. In the meantime an agreement had been entered into between all parties covering the payment of $32,116.42 for the disputed coupons to the executor, and providing for the filing of a cross-bill in the case, and that the bill and cross-bill should be heard and considered together. The bonds were accordingly sold and delivered to Hinman, and the full purchase price thereof has been paid, and all conditions and provisions of the offer of March 14, 1911, the deposit agreement of April 1, 1911, the *nisi* order of November 25, 1911, and subsequent orders of the Probate Court with reference to the sale of the bonds, have been complied with. In substance, therefore, this litigation is reduced to a suit by the executor against the Central Trust Company for $200,000 damages for not declaring the principal of the bonds due because of the failure of the Inter Ocean Company to pay the interest coupons after demand made. It follows from the conclusion we have reached, as stated above, that the Trust Company did not violate its duty in not declaring the principal of the bonds due, or in wrongfully parting with the coupons, when it received the payment of $32,116.42 therefor, and that the executor has no right of action for damages against the Trust Company. It is, therefore, unnecessary for us to consider and pass upon the competency of the proffered evidence on the question of damages.

We find no substantial error in the decree, and it is, therefore, affirmed.

*Affirmed.*